GOLEMBIOWSKI v MADISON HEIGHTS CIVIL SERVICE
COMMISSION

Docket No. 78-787. Submitted June 21, 1979, at Detroit.—Decided
October 16, 1979. Leave to appeal applied for.

Mark G. Golembiowski, a policeman with the Madison Heights
Police Department, was charged with six violations of depart-
ment regulations, those being: (1) failure to turn in a traffic
ticket; (2) being abusive and discourteous to a motorist; (3)
refusing and neglecting to report to his assigned platoon; (4)
failing to respond to a silent radio alarm and improperly
ticketing a person at an adjacent structure; (5) reporting to a
shift to which he was not assigned, disrupting the briefing
sessions of that shift and leaving his assigned shift early to
attend those briefing sessions; and (6) harassing a citizen,
failing to make an arrest for intoxication following a traffic
stop despite evidence of the same and failing to turn in a traffic
accident report. The punishments imposed by the city were as
follows: a written reprimand, a three-day suspension, a 15-day
suspension, a 30-day suspension, discharge from employment,
and discharge from employment, respectively. Following sev-
eral hearings the City of Madison Heights Civil Service Com-
mission reduced the written reprimand to an oral reprimand,
reduced the 30-day suspension to a 21-day suspension, affirmed
the three- and 15-day suspensions and affirmed the two dis-
charges. Plaintiff appealed to circuit court. The Oakland Circuit

REFERENCES FOR POINTS IN HEADNOTES
[1] 7 Am Jur 2d, Attorney at Law §§ 93, 94, 154, 158.
[2] 15A Am Jur 2d, Civil Service §§ 61, 68, 71, 88-90.
   70 Am Jur 2d, Sheriffs, Police, and Constables §§ 15, 17.
[3] 15A Am Jur 2d, Civil Service § 79 et seq.
[4] 2 Am Jur 2d, Administrative Law §§ 61, 300, 306, 307.
[5] 15A Am Jur 2d, Civil Service §§ 61, 63.
   70 Am Jur 2d, Sheriffs, Police, and Constables § 12 et seq.
[6] 2 Am Jur 2d, Administrative Law § 495.
   15 Am Jur 2d, Civil Service § 87.
[7] 16A Am Jur 2d, Constitutional Law §§ 459-461.
   73 Am Jur 2d, Statutes § 346.

Court, Frederick C. Ziem, J., affirmed the actions of the Madison Heights Civil Service Commission. Plaintiff appeals. *Held:*

1. The fact that the attorney representing the city before the civil service commission was an associate of the attorney who acted as legal advisor to the commission did not deny plaintiff a fair hearing before the commission. The participation of counsel so associated will not result in the denial of a fair hearing in the absence of evidence of actual bias.

2. The discharge of plaintiff by the city prior to a hearing before the civil service commission was improper. The statute only permits discharge of the officer by the civil service commission. While the city may not discharge a police officer pending the determination of the commission, the city may suspend the officer without pay for a period not exceeding 30 days pending the commission's determination on the charges. Any period of suspension in excess of that determined to be appropriate by the commission will result in an award of back pay.

3. Even if there is evidence upon which a city civil service commission could rely to justify its determination, a court may act if the commission's determination is contrary to law.

4. Where a police department issues rules and regulations relative to departmental procedures, the department must not violate those rules and regulations.

5. The rules and regulations of the Madison Heights Police Department appear to make no provision for escalated punishment where there are multiple violations which fall within different classifications. If, upon remand, the circuit court determines that there is no provision within the police department's rules providing for escalated punishment, the discharge of plaintiff would be in violation of the police department's own rules, and remand by the circuit court to the civil service commission for a determination of appropriate punishment would be required.

6. Plaintiff's failure to raise before the civil service commission the question of whether a charge of conduct unbecoming an officer is constitutionally infirm for vagueness does not preclude consideration of that question by the circuit court on appeal, or by the Court of Appeals on further appeal, where that question was first raised in the appeal to circuit court. Since administrative agencies do not generally consider constitutional questions, raising that question before the civil service commission is unnecessary to preserve the right to a judicial determination of the question.

7. The discharge of plaintiff for conduct unbecoming an

officer is constitutionally infirm on the basis of vagueness. Since neither the language of the departmental regulation itself nor any prior construction of the regulation provided a basis upon which plaintiff could have reasonably understood the conduct being proscribed, the language failed to give the constitutionally required prior notice of the offense.

Affirmed in part, reversed in part and remanded for further proceedings.

1. ADMINISTRATIVE LAW — ATTORNEY AND CLIENT — FAIR HEARING — CIVIL SERVICE COMMISSION.

Representation of a city before a city civil service commission by an attorney who is an associate of an attorney who is legal advisor to the civil service commission does not, in the absence of evidence of actual bias, deny a fair hearing to a policeman against whom charges have been brought.

2. ADMINISTRATIVE LAW — LABOR RELATIONS — CIVIL SERVICE — POLICEMEN — DISCHARGE — SUSPENSION — HEARING — BACK PAY — STATUTES.

A policeman may not be discharged prior to a hearing before the city civil service commission; however, a policeman may be suspended without pay for a period not to exceed 30 days pending the determination of the civil service commission, with back pay being awarded for any period exceeding the period of suspension determined by the commission (MCL 38.513, 38.514; MSA 5.3363, 5.3364).

3. ADMINISTRATIVE LAW — REVIEW — COURTS — JURISDICTION.

A determination of a city civil service commission is subject to judicial review, even if there is evidence upon which the commission could rely to justify its finding, where the commission's determination is contrary to law.

4. ADMINISTRATIVE LAW — RULES AND REGULATIONS — VIOLATION.

A police department which issues rules and regulations governing its activity must abide by the procedures set forth in its rules and regulations.

5. ADMINISTRATIVE LAW — RULES AND REGULATIONS — VIOLATION — DISCHARGE.

Discharge of a policeman is improper where, although the policeman is found to have violated several departmental rules, none of the infractions of the departmental rules warrant discharge under those rules and the departmental rules make no provi-

sion for cumulative or escalated punishment for multiple infractions in different categories.

6. APPEAL AND ERROR — ADMINISTRATIVE LAW — CONSTITUTIONAL QUESTIONS.

Failure to raise a constitutional question before a city civil service commission does not preclude appellate review where the question is raised on appeal before the circuit court, since administrative agencies, as a general rule, do not consider constitutional questions.

7. CONSTITUTIONAL LAW — VAGUENESS — CONDUCT UNBECOMING AN OFFICER.

The discharge of a policeman for "conduct unbecoming an officer" is constitutionally infirm on the basis of vagueness where the department rule under which the officer is being discharged does not by its language or by prior construction provide a basis by which the individual can reasonably understand the conduct being proscribed.

*Thomas W. Jakuc,* for plaintiff.

*Harry H. Young,* City Attorney, and *Larry H. Sherman,* Assistant City Attorney, for defendant.

Before: N. J. KAUFMAN, P.J., and D. C. RILEY and J. X. THEILER,* JJ.

D. C. RILEY, J. On February 18, 1977, plaintiff Mark Golembiowski filed a claim of appeal[1] with the Oakland County Circuit Court from a decision by the Madison Heights Civil Service Commission (hereinafter the Commission) which reduced a written reprimand to an oral reprimand, and which affirmed several suspensions of various lengths and plaintiff's discharge from the Madison Heights Police Department. Pursuant to hearings held on January 21 and February 1, 1978, the

---

* Circuit judge, sitting on the Court of Appeals by assignment.
[1] MCL 38.514; MSA 5.3364.

circuit court affirmed. Following plaintiff's appeal by right, we reverse in part and remand for additional proceedings.

The essential facts forming the basis of the litigation are not in dispute. Plaintiff was initially given a written reprimand on September 2, 1976, for his failure to turn in a traffic ticket, in violation of department regulations, at the end of his tour of duty on August 27, 1976. On September 16, 1976, plaintiff was presented with four separate letters signed by the acting city manager, each containing a stated charge (or charges) and including a specific measure of punishment for each. Briefly, they are as follow:

The first charge, for which plaintiff was suspended without pay for three working days, alleged that the officer was "abusive and discourteous" to a motorist. The second charge, which involved a 15-day suspension, alleged that plaintiff "deliberately refused and neglected" to report to his assigned platoon. The third charge, which carried a 30-day suspension, charged that plaintiff did not properly respond to a silent radio alarm and inspect a building for signs of a break in, but instead proceeded to an adjacent tent structure and arrested a person who was supposedly a uniformed private guard. Further, this charge accused plaintiff with improperly ticketing the father of the arrestee for failure to produce a driver's license on request. The fourth charge of September 16, 1976, which contained notification of discharge, accused plaintiff with reporting, on four occasions, to shifts to which he was not assigned and disrupting the briefing sessions of those shifts. It also alleged that plaintiff abandoned his post on two occasions at least 15 minutes before the end of his tour of duty so that he could attend the above-

mentioned briefing sessions. It further accused plaintiff with reporting for duty on his off day.

A fifth charge was filed on November 1, 1976. The charge dismissed plaintiff for harassment of the above-mentioned guard following a traffic stop on September 17, 1976, and with failure to arrest him despite evidence of intoxication. Also cited was plaintiff's failure to turn in a "hit and run accident" traffic report.

After several hearings were held, the Commission reduced the written reprimand to an oral one. As to the other five charges, the 3- and 15-day suspensions were affirmed, the 30-day suspension was reduced to 21 days and both discharges were upheld.

Other facts are incorporated where necessary to a resolution of plaintiff's five assignments of error.

Plaintiff first claims that he was denied a fair hearing because the attorney who prosecuted the case on behalf of the city was a member of the same law firm which included a partner who acted as legal advisor to the Commission. In *Arnold v Crestwood Board of Education,* 87 Mich App 625, 651-652; 277 NW2d 158 (1979), a number of public school teachers had been fired by defendant as a result of hearings held pursuant to § 6 of the public employment relations act, MCL 423.206; MSA 17.455(6). On appeal, the teachers charged that they were denied due process of law because counsel for the board both represented the board's case and acted as an advisor to the board during the proceedings. The teachers urged the Court to adopt a very strict approach, as have the Pennsylvania courts.[2] This Court, however, chose to do otherwise.

---

[2] See *English v North East Board of Education,* 22 Pa Comm 240; 348 A2d 494 (1975), *Horn v Twp of Hilltown,* 461 Pa 745; 337 A2d 858 (1975).

"We prefer to adhere to the Federal rule, admonishing district school boards that only if evidence of prejudice or bias clearly appears on the record will participation of counsel in the dual role constitute a violation of due process." 87 Mich App at 652.

The present case concerns a situation even more attenuated than *Arnold,* where the board's legal advisor also prosecuted the case before it. Here, the Commission's legal advisor was only an associate of the attorney who prosecuted the suit. Moreover, plaintiff has not presented any evidence below or on appeal of actual bias. At the time of plaintiff's objection to the Commission, counsel indicated that there was no contact during or outside of the proceedings in regard to "this particular case or any cases before the Act 78 Board".

Plaintiff's reliance on *Crampton v Dep't of State,* 395 Mich 347; 235 NW2d 352 (1975), and *City of Mishawaka v Stewart,* 261 Ind 670; 310 NE2d 65 (1974), is misplaced, as those cases addressed factual settings where a party whose interests opposed plaintiff's actually sat as a member of the hearing tribunal. Those concerns are not present here.

Finally, in holding that, under *Crestwood,* the instant facts do not result in a constitutionally intolerable predicament, we note that plaintiff's argument was not raised before the Commission until after seven days of hearing and testimony on all but the final charges. Under these circumstances, we find no error.

Next, plaintiff decries the procedural basis of his dismissal, maintaining that under § 14 of 1935 PA 78 (Act 78) (fireman and policeman's civil service act), MCL 38.514; MSA 5.3364, only the Commission can lawfully terminate an officer's employment, and therefore, his discharge by the city manager prior to the Commission hearings was

erroneous. Defendant counters that § 14 allows an officer to hold office only during good behavior and efficient service and that, while the statute mandates review of any discharge, this may occur *after* the officer's discharge by the city.

In pertinent part, § 13 of Act 78 states that in cases of reductions, layoffs or suspensions, an employee or subordinate shall be provided a copy of reasons and shall be entitled to a hearing before the Commission as provided in § 14. In addition:

"Nothing in this act contained shall limit the power of an appointing officer to suspend without pay, for purposes of discipline, an employee or subordinate for a reasonable period, not exceeding 30 days: Provided, however, That successive suspensions shall not be allowed, and after such suspension, employees shall be entitled to a hearing as provided for in this section and in section 14".

Section 14 mandates that:

"The tenure of every one holding an office, place, position or employment under the provisions of this act shall be only during good behavior and efficient service; and any such person may be removed or discharged, suspended without pay, deprived of vacation privileges or other special privileges, by the civil service commission, for incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment to the public, neglect of duty, violation of the provisions of this act or the rules of the commission, or any other failure of good behavior, or any other acts of misfeasance, malfeasance or nonfeasance in office: Provided, however, No member of any fire or police department within the terms of this act shall be removed, discharged, reduced in rank or pay, suspended or otherwise punished except for cause, and in no event until he shall have been furnished with a written statement of the charges and the reasons for such actions, * * * If the person sought to be removed or reduced shall

demand it, the civil service commission shall grant him a public hearing, which hearing shall be held within a period of 10 days from the filing of the charges in writing and a written answer thereto. Pending the period between the making of the charges as a basis for removal and the decision thereon by the commission the member shall remain in office. * * * In the event that the civil service commission fails to justify the action of the removing officer then the person sought to be removed shall be reinstated with full pay for the entire period during which he may have been prevented from performing his usual employment, * * * In the event that the civil service commission shall sustain the action of the removing officer, the person removed shall have an immediate right of appeal to the circuit court".

Section 13 permits suspension, without pay, of an officer "for a reasonable period, not exceeding 30 days". However, successive suspensions are impermissible. Furthermore, the § 14 hearing occurs after suspension.

Section 14 outlines the basis for either the suspension or discharge of an officer. Where a discharge is involved, it permits a hearing before the civil service commission if requested by the "person sought to be removed". This language would indicate that the Legislature did not intend for the officer to be discharged before the Commission hearing. This conclusion is supported by the sentence immediately following: "Pending the period between the making of the charges as a basis for removal and the decision thereon by the commission, *the member shall remain in office.*" (Emphasis supplied.) It goes on to say that "[i]n the event that the civil service commission fails to justify the action of the removing officer then *the person sought to be removed* shall be reinstated with full pay for the entire period during which he may have been prevented from performing his usual

employment". (Emphasis supplied.) The emphasized language is significant especially in light of the Legislature's designation of the officer charged with misconduct as a "person removed" only after the civil service commission has sustained the action of the removing officer. Nor is the language concerning reinstatement "with full pay for the entire period during which he may have been prevented from performing his usual employment" necessarily to the contrary. Since § 14 applies to suspension as well as discharge hearings, this language merely provides for the possibility that the officer was suspended prior to the hearing. As will be recalled, § 13 specifically permits suspension prior to a civil service hearing. Obviously, if the commission found the suspension to be unwarranted, then the officer would be reinstated with full pay.

This interpretation of an officer's right to remain in office until discharged by a decision of the Commission was sustained in *Core v Traverse City,* 89 Mich App 492, 501-503; 280 NW2d 569 (1979). See also *Solomon v Highland Park Civil Service Comm,* 47 Mich App 536, 541; 209 NW2d 698 (1973).

In the case at bar, it would appear that from the memorandums of September 16 and November 1, 1976, plaintiff was in effect discharged as of those dates, *i.e.,* no longer employed or paid by defendant. While it is true that defendant could suspend the plaintiff pursuant to § 13, that power is restricted in the following ways: (1) successive suspensions are not permitted and (2) no suspension can exceed 30 days. Plaintiff was given three separate suspensions on the same day; one of the 3 days, another of 15 and the last for 30 days. If the suspensions were not concurrent, two of them

must be disallowed. This would leave the 30-day suspension which the Commission reduced to 21 days. At the end of the 21-day period, plaintiff should have been reinstated pending the Commission hearing. Hence, plaintiff was improperly denied reinstatement and departmental salary from approximately October 8, 1976. A remand to the circuit court is necessary to determine when, in fact, plaintiff was discharged, whether the punishments were concurrent, and when the 21-day suspension would have ended. Payment should be made at plaintiff's regular salary for the interim between the conclusion of the 21-day period and the date of the Commission's final order.

The second (15-day suspension) and the fourth (first discharge) charges against plaintiff concerned a disputed transfer of plaintiff by defendant from the midnight to afternoon shift. Plaintiff contended before the court below that the police department neglected to comply with its own regulations regarding the issuance of personnel orders, reasoning that he could not be disciplined for failure to obey an invalid transfer. The court ruled for defendant, basing its decision on *Hunn v Madison Heights,* 60 Mich App 326; 230 NW2d 414 (1975), and concluding that its review of the matter was limited to a determination whether "there is evidence upon which the Madison Heights Civil Service Commission could rely upon which would justify its finding".

Despite this general rule, it is also clear that the Commission's decision may not be contrary to law. *Hunn, supra* at 335. A police order, PR 2.01, was issued on January 1, 1976, by the Madison Heights police chief and stated in pertinent part:

"II. *AUTHORITY TO ISSUE:*

"A. All department-wide publication shall be issued only on the authority of the CHIEF OF POLICE. General, Special, Personnel Orders; Procedures, and Policies shall bear the authority 'By order of the Chief of Police' unless signed by him. Only the Chief of Police may issue or sign General, Special Orders; Procedures and Policies, however, Division Commanders specifically designated by the Chief of Police may sign other Department-wide publications."

Defendant asserts that the second sentence authorizes division commanders to promulgate personnel orders. That authority is apparently modified by the requirement that "Personnel Orders * * * shall bear the authority 'by Order of the Chief of Police' unless signed by him." Hence, while division commanders may issue personnel orders, it would seem they may do so only by order of the police chief. An examination of the transfer order herein issued shows that it lacked that authorization.

Where an agency issues rules and regulations to govern its activity, it may not violate them. *Brown v Dep't of State Police,* 392 Mich 811 (1974). See *Peterson v Dep't of Natural Resources,* 392 Mich 68, 75-76; 219 NW2d 34 (1974). Thus, plaintiff's contention above may not be said to lack merit. Since the lower court failed to address whether, in fact, department regulations were ever violated, the issue must be remanded. On remand, the court should ascertain the specific departmental policy regarding personnel orders and whether the disputed transfer order complied with them. A negative finding would necessitate reversal of the Commission as to the relevant portions of charges two and four.

Plaintiff further claims that the police department's failure to follow additional internal regula-

tions concerning progressive levels of discipline resulted in excessive and unjustified punishment. Again, the circuit court's erroneous supposition that it lacked authority to address the issue compels a remand for additional proceedings.

Section IIA of a police order, PR 12.01, issued January 1, 1976, described procedures concerning disciplinary action as follows:

"II. *PROCEDURE*

"A. The degree of disciplinary action will depend on the offense, mitigating circumstances surrounding the offense, and prior record. Final disposition will result in one or more of the following:

"1. Oral reprimand
2. Written reprimand
3. Suspension up to        30 days
   a. First offense        3 days
   b. Second    "          10 days
   c. Third     "          30 days
4. Demotion
5. Removal from service"

Procedures relating to suspensions which cannot be corrected by oral or written reprimands involve, *inter alia,* submission of the violations to the division commander, chief of police, and city administrator who "shall" review the charges and reports and conduct an interview with the officer involved.

It is not clear that defendant adhered to this procedure. For example, plaintiff insists that he was never interviewed by his superiors, including the chief of police and city manager. Defendant does not deny this assertion.

Section IV of that same order establishes progressive penalties for specific disciplinary infrac-

tions, and opens with the following explanatory paragraph:

"To provide some guidance to members of this department as to what can be expected for the violation of rules, procedures and orders, the following list of possible offenses are given along with the corrective discipline that will be imposed."

Insofar as they are relevant, the specific offenses and their penalties are:

*"Insubordination (i.e.,* 'The willful countermand of an order issued by a superior officer to a subordinate or any disrespectful, insolent, or abusive language or behavior directed toward a superior')

| "First offense | — | First suspension |
| Second offense | — | Second suspension |
| Third offense | — | Third suspension |
| Fourth offense | — | Discharge" |

*"Dereliction of duty (i.e.,* 'The execution of assignments and/or delegated duties improperly, inaccurately, or negligently')

| "First offense | — | Written reprimand |
| Second offense | — | First suspension |
| Third offense | — | Second suspension |
| Fourth offense | — | Third suspension" |

*"Conduct unbecoming a police officer*

| "First offense | — | First suspension |
| Second offense | — | Second suspension |
| Third offense | — | Third suspension |
| Fourth offense | — | Discharge" |

*"Failure to properly follow arrest, search, and reporting procedures:*

| "First offense | — | Oral |
| Second offense | — | Written |
| Third offense | — | First suspension |
| Fourth offense | — | Second suspension" |

Plaintiff's written reprimand for failure to re-

turn a traffic ticket was subsequently reduced to an oral reprimand by the Commission. This appears to correspond to failure to properly follow arrest, search and reporting procedures. The first charge of September 16, 1976 (abusive and discourteous treatment of a motorist) resulted in a 3-day suspension. It appears to correspond to the category for conduct unbecoming an officer. The penalty for the first offense is a 3-day suspension. The second charge (deliberate refusal and neglect to report to his assigned platoon), which resulted in 15 days suspension, would seem to be an act of insubordination. As it was apparently plaintiff's first charge on that basis, the appropriate penalty was a first suspension. The third charge (neglect of duty, failure to properly inspect a building and ticketing an individual who failed to produce a driver's license while in police headquarters) resulted in 30 days suspension, later reduced to 21 days. However, as a first offense under dereliction of duty, plaintiff was entitled only to a written reprimand. The fourth charge (improperly reporting to a shift to which he was not assigned on at least four occasions) resulted in discharge. This could have been found to be his second offense of insubordination (requiring a second suspension), or a second offense of dereliction of duty (requiring a first suspension), or his second offense of conduct unbecoming an officer (requiring a second suspension). Finally, the fifth charge of November 1, 1976 (harassment of a civilian) produced a second discharge. As his third offense of conduct unbecoming an officer (as characterized by the November 1, 1976, letter) plaintiff was entitled only to his second or third suspension. Thus, it appears that the department did not follow its own procedures with regard to at least one of the suspensions and both of the discharges.

Defendant argues that the following language contained in the same order relied upon by plaintiff permitted commanding officers to relieve officers for insubordination.

"Commanding Officers or supervisors have the authority to relieve officers under their command for the following reasons:

\* \* \*

"5. Insubordination."

It is not clear that the power to relieve officers is equivalent, on the face of it, to discharge. It could also mean suspension. And even assuming, *arguendo,* it is equivalent to discharge, it would be reconcilable with the penalty specified under insubordination where it was the officer's fourth offense, not as here, his second.

The circuit court did not consider this matter, as it felt it was without authority. Therefore, a remand on this basis is also mandated. In doing so, we do not mean to suggest that a police department may not establish a horizontal, transcategorical procedure of disciplinary punishment based upon improper conduct (according to either numerical or subject matter criteria) despite a patrolman's failure to accumulate the most serious punishment (discharge) for a particular classification. Clearly, it could have been accomplished in the present case. Absent authority to do so, however, in the cited rules or other regulations, the imposition of such escalated punishment would be in violation of the defendant's own policy. If, on remand, it be so determined by the court, it should, in turn, remand the case to the Commission for more appropriate punishment. See *Brown,*

*supra, Konyha v Mount Clemens Civil Service Comm,* 393 Mich 422; 224 NW2d 833 (1975).

Finally, plaintiff argues that the charge of "conduct unbecoming an officer" as contained in the November 1, 1976, discharge letter, is unconstitutionally vague. The trial judge, having examined the discharge letter, found for the defendant because the letter "sets forth, with sufficient exactness, the particular acts of the officer that the City claims precipitated the City Manager's actions".

A review of the record discloses that plaintiff raised the question before the circuit court but did not argue the same to the Commission. As a general rule, administrative boards or commissions do not consider constitutional questions. *Dation v Ford Motor Co,* 314 Mich 152, 159; 22 NW2d 252 (1946), and cases cited therein. Thus, contrary to defendant's advocation, plaintiff's omission did not serve to preclude his claim for appellate review. See also *Falk v Civil Service Comm of Macomb County,* 57 Mich App 134, 137-138; 225 NW2d 713 (1974), where plaintiff's allegation was not preserved due to the failure to raise it both before the Commission *and* the circuit court.

With regard to the lower court's justification upholding the dismissal, we would note that the vagueness doctrine relates to the adequacy of notice regarding the type of conduct proscribed *antecedent* the occurrence in issue, rather than, as in this instance, the specificity or clarity of the after-the-fact reasons underlying the imposition of disciplinary punishment.

In *Sponick v Detroit Police Dep't,* 49 Mich App 162, 174-175; 211 NW2d 674 (1973), plaintiff was found to have violated a departmental rule of conduct similar to the one in the case at bar. The Court found the rule to be unconstitutionally

vague based on *Avrech v Secretary of the Navy,* 155 US App DC 352, 355-356; 477 F2d 1237 (1973), which held that Article 134 of the Uniform Code of Military Justice, 10 USCA 934, imposing criminal sanctions for "disorders and neglects" and "conduct" prejudicing or discrediting the armed forces, was invalid because it "gives no fair warning of the conduct it proscribes and fails to provide any ascertainable standard of guilt to circumscribe the discretion of the enforcing authorities". 49 Mich App at 175.

The same issue was faced in *Rinaldi v Livonia,* 69 Mich App 58; 244 NW2d 609 (1976). There, a police officer who had fled the scene of an accident while off duty was charged with "conduct unbecoming an officer". The Court noted that the constitutional underpinnings of *Avrech* and *Sponick,* *supra,* had been substantially removed by the opinion in *Parker v Levy,* 417 US 733; 94 S Ct 2547; 41 L Ed 2d 439 (1974), which upheld the court martial of an army physician for "conduct unbecoming an officer and gentleman". The *Rinaldi* panel found significant *Levy's* emphasis of three characteristics pertinent to that case in rejecting the vagueness challenge:

"(1) Prior construction of the regulation narrowed its scope and supplied 'considerable specificity by way of examples of the conduct'. 417 US 754; 94 S Ct 2561; 41 L Ed 2d 456. (2) The regulations 'by their terms or as authoritatively construed apply without question to certain activities, but whose application to other behavior is uncertain'. 417 US 755-756; 94 S Ct 2561; 41 L Ed 2d 457. (3) Because of the 'reasons which differentiate military society from civilian society, * * * Congress is permitted to legislate both with greater breadth and with greater flexibility when prescribing the rules by which the former shall be governed than it is when

prescribing rules for the later'. 417 US 756; 94 S Ct 2561-2562; 41 L Ed 2d 458." 69 Mich App at 66.

Of the three, *Rinaldi* determined the second to be clearly present in the case before it, and further stated that, as in the military, a police force may require a more stringent standard of conduct than that permissible in the civilian sphere. 69 Mich App at 66-67. In so holding, the Court specifically limited its ruling to the circumstances before it, stating that "[w]e make no comment on future factual situations; we hold only that the present plaintiff's conduct was clearly conduct unbecoming an officer".[3] 69 Mich App at 67.

In the present case, there is no indication of previous construction of the regulation. In addition, we are not constrained to say that it applies without question to this type of behavior. The incident in question involved the stopping of a motorist with an intoxicated companion, and argument with one of the vehicle's occupants regarding a previous encounter with the officer, the emptying of beer on the pavement at plaintiff's order and a determination that the driver of the automobile was not intoxicated. Such a situation would require a sizable degree of discretion on the part of the police officer. Moreover, it would not appear that plaintiff could have known at the time that a judgmental mistake on his part would constitute conduct unbecoming an officer.

Nor do we find *Levy's* third criteria applicable. As a quasi-military organization, it is undoubtedly

---

[3] "A police officer, intent on retaining his position on the force, can expect that he will be held to a higher standard of conduct regarding obedience to the laws and ordinances of this state than would a common civilian. The police officer has greater familiarity with the obligations of a motorist to remain at the scene of the accident. He must contemplate loss of employment for the conduct evidenced here." *Rinaldi v Livonia,* 69 Mich App 58, 67; 244 NW2d 609 (1976).

true that police departments may exact a more elevated standard of conduct from their officers. Yet the rules effecting such a standard must nevertheless clearly delineate what is forbidden, otherwise, they fail their stated purpose and goal. As the Supreme Court explained, this latter characteristic requires "that criminal responsibility should not attach where one could not reasonably understand that his conduct is proscribed". *Levy, supra* at 417 US 757; 94 S Ct 2562; 41 L Ed 2d 458. Consistent therewith, on these facts, plaintiff's second discharge based on conduct unbecoming an officer is dismissed; since the rule as applied to the cited conduct lacks the requisite prior notice and, thus, is constitutionally infirm.

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion. No costs, neither party having prevailed in full.