GOLEMBIOWSKI v MADISON HEIGHTS CIVIL SERVICE
COMMISSION (AFTER REMAND)

Docket No. 56848. Submitted April 19, 1983, at Detroit.—Decided
    September 13, 1983.

    Mark G. Golembiowski, a policeman with the Madison Heights
    Police Department, was charged with six violations of depart-
    ment regulations, those being: (1) failure to turn in a traffic
    ticket; (2) being abusive and discourteous to a motorist; (3)
    refusing and neglecting to report to his assigned platoon; (4)
    failing to respond to a silent radio alarm and improperly
    ticketing a person at an adjacent structure; (5) reporting to a
    shift to which he was not assigned, disrupting the briefing
    sessions of that shift and leaving his assigned shift early to
    attend those briefing sessions; and (6) harassing a citizen,
    failing to make an arrest for intoxication following a traffic
    stop despite evidence of the same, and failing to turn in a
    traffic accident report. The punishments imposed by the city
    were as follows: a written reprimand, a three-day suspension, a
    15-day suspension, a 30-day suspension, discharge from employ-
    ment, and discharge from employment, respectively. Following
    several hearings the City of Madison Heights Civil Service
    Commission reduced the written reprimand to an oral repri-
    mand, reduced the 30-day suspension to a 21-day suspension,
    affirmed the 3- and 15-day suspensions, and affirmed the two
    discharges. Plaintiff appealed to circuit court. The Oakland
    Circuit Court, Frederick C. Ziem, J., affirmed the actions of the
    Madison Heights Civil Service Commission. Plaintiff appealed,
    and the Court of Appeals affirmed in part, reversed in part, and
    remanded the case to the circuit court for a determination of
    whether the police department complied with its own internal
    rules in issuing an order changing plaintiff's work shift and in
    disciplining plaintiff, 93 Mich App 137; 286 NW2d 69 (1979).
    The court, Frederick C. Ziem, J., found that the police depart-
    ment's order changing plaintiff's shift and the discipline im-

REFERENCE FOR POINTS IN HEADNOTE
2 Am Jur 2d, Administrative Law § 289 et seq.

posed on plaintiff were not in conflict with the department's rules and, thus, were valid. Plaintiff appeals. *Held:*

1. The order transferring plaintiff from the midnight to the afternoon shift of the patrol division of the department was valid.

2. Plaintiff's argument that the discipline imposed on plaintiff, ranging from suspension to ultimately his discharge, was wrongful because it did not conform to the police department's own rules regarding discipline is rejected.

3. The remaining issues raised by plaintiff on appeal are without merit.

Affirmed.

ADMINISTRATIVE LAW — AGENCIES — RULES — REGULATIONS.

The principle that an agency which issues rules and regulations to govern its activity may not violate them applies only to rules which evince an intent of the agency to establish mandatory rules which must be followed by the agency.

*Thomas W. Jakuc,* for plaintiff.

*Susan M. Tardiff,* Assistant City Attorney, City of Madison Heights, for defendant.

AFTER REMAND

Before: BRONSON, P.J., and J. H. GILLIS and MAC-KENZIE, JJ.

PER CURIAM. The facts of this case were set forth in *Golembiowski v Madison Heights Civil Service Comm,* 93 Mich App 137; 286 NW2d 69 (1979), *lv den* 408 Mich 893 (1980), where we remanded this case to the lower court for a determination of whether the police department complied with its own internal rules in issuing an order changing plaintiff's work shift and in disciplining plaintiff. The lower court found that the police department's order changing plaintiff's shift and the discipline imposed on plaintiff were not in

conflict with the department's rules and thus were valid. We affirm.

There is no dispute that the order signed by Lieutenant Sloan changing plaintiff's work shift is a "personnel" order. Although police department rule PR 2.01, section IIA, addresses personnel and other types of orders, we agree with the lower court that this rule, requiring that an order be signed by the Chief of Police or that it bear the language "by order of the Chief of Police", applies only to orders affecting the entire police department and not to orders affecting only one division of the department. This conclusion is supported not only by the language of PR 2.01, addressing itself to "department-wide" publications, but also by the testimony of the Chief of Police that, although he must issue orders affecting more than one division of the department, the commander of each division has the authority to issue orders affecting only his own division. The order at issue in the present case transferred plaintiff from the midnight to the afternoon shift of the patrol division of the department, and did not affect more than one division of the department. Consequently, the order signed by Lieutenant Sloan, commander of the patrol division, did not fall within the purview of PR 2.01 and was valid. Plaintiff's contravention of this order was, therefore, not excused on the ground that the order was invalid under PR 2.01.

The other issue remanded to the lower court for resolution was whether the discipline imposed on plaintiff, ranging from suspension to ultimately his discharge, was wrongful because it did not conform to the police department's own rules regarding discipline. Plaintiff relies on police department

rule PR 12.01, section IV, which provides as follows:

"Insubordination *(i.e.,* 'The willful countermand of an order issued by a superior officer to a subordinate or any disrespectful, insolent, or abusive language or behavior directed toward a superior')

    "First offense    — First suspension
    Second offense    — Second suspension
    Third offense    — Third suspension
    Fourth offense    — Discharge"

"Dereliction of duty *(i.e.,* 'The execution of assignments and/or delegated duties improperly, inaccurately, or negligently')

    "First offense    — Written reprimand
    Second offense    — First suspension
    Third offense    — Second suspension
    Fourth offense    — Third suspension"

"Conduct unbecoming a police officer

    "First offense    — First suspension
    Second offense    — Second suspension
    Third offense    — Third suspension
    Fourth offense    — Discharge"

"Failure to properly follow arrest, search, and reporting procedures:

    "First offense    — Oral
    Second offense    — Written
    Third offense    — First suspension
    Fourth offense    — Second suspension."

Plaintiff argues that his discipline exceeded that provided. However, we agree with the lower court that the categorized progressive discipline described in section IV of PR 12.01 is not a mandatory rule which the police department was obliged to strictly follow, and thus the fact that the discipline imposed on plaintiff did not conform with those provisions did not render that discipline invalid.

We so hold for the following reasons. The provi-

sions of PR 12.01, section IV, relied on by plaintiff are prefaced by the following:

"To provide some guidance to members of this department as to what can be expected for the violation of rules, procedures and orders, the following list of possible offenses are given along with the corrective discipline that will be imposed."

The above language stating that the description of offenses and discipline in PR 12.01, section IV, is to "provide some guidance" strongly suggests that section IV was not intended to set forth a mandatory disciplinary formula to which the police department must strictly adhere.

Also supporting our conclusion that section IV of PR 12.01 is not a mandatory rule is the language of section IIA of PR 12.01, which provides as follows:

"II. Procedure

"A. The degree of disciplinary action will depend on the offense, mitigating circumstances surrounding the offense, and prior record. Final disposition will result in one or more of the following:

"1. Oral reprimand

"2. Written reprimand

"3. Suspension up to 30 days

| a. First | offense | 3 days |
| b. Second | " | 10 days |
| c. Third | " | 30 days |

"4. Demotion

"5. Removal from service."

If section IV were interpreted as setting forth a mandatory system of categorized progressive discipline, it would conflict with the above language of section IIA that mitigating circumstances and

prior record will be considered in determining the degree of disciplinary action since under section IV the only consideration would be how many previous offenses of the same category the employee had committed, if any, without regard to any mitigating circumstances or to any previous offenses of a different category which may be part of an employee's prior record.

In addition, we note, as did the trial court, that if section IV were read as constituting a mandatory rule of categorized progressive discipline, an employee could commit a multitude of serious offenses and yet, so long as those offenses were classified as falling under different categories, could not be discharged, even though, in the absence of section IV, the employee could be discharged for cause under MCL 38.514; MSA 5.3364. It is highly unlikely that the police department intended such a result, and thus this also buttresses our conclusion that section IV of PR 12.01 was not intended to be a mandatory rule governing discipline.

In concluding that section IV of PR 12.01 is not a mandatory rule governing discipline which the police department was obliged to follow, we do not disturb the principle that where "an agency issues rules and regulations to govern its activity, it may not violate them". *Golembiowski, supra,* p 148. Rather we simply recognize that this principle applies only to rules which evince an intent of the agency to establish mandatory rules which must be followed by the agency. In the present case, in light of the explanatory language of section IV itself that it is to provide "some guidance", the conflict with section IIA of the same rule, PR 12.01, if section IV were interpreted as a mandatory rule, and the severe limitation on the statutory power to discharge for cause if section IV

were read as a mandatory rule, we find that section IV could not have been intended by the police department to constitute a mandatory rule governing discipline of its employees.

Finally, plaintiff raises some additional arguments that we find to be without merit. First, plaintiff suggests in his brief on appeal that the lower court could not properly determine that the police department did not violate its own rules in disciplining plaintiff without additional evidence being introduced at the proceedings on remand. We do not believe the taking of additional evidence never presented before defendant commission would have been proper, *Shelby Twp Fire Dep't v Shields,* 115 Mich App 98, 105; 320 NW2d 306 (1982), and moreover, plaintiff is in no position to raise this argument since the certified statement of facts reflects that plaintiff objected to the taking of any additional testimony on remand. Second, plaintiff argues that the police department violated its own rules in failing to conduct interviews with plaintiff as part of the disciplinary procedure. However, the certified statement of facts does not indicate that plaintiff raised this argument in the proceedings on remand and it was not addressed by the lower court; consequently, this claim was not preserved for appellate review. *Shelby Twp Fire Dep't, supra,* p 104.

Lastly, plaintiff argues that his discharge represented excessive and unjustified discipline, relying on *Konyha v Mt Clemens Civil Service Comm,* 393 Mich 422; 224 NW2d 833 (1975). We agree with the lower court that there was substantial evidence to support defendant commission's decision to discharge plaintiff. MCL 38.514; MSA 5.3364; *Core v Traverse City,* 89 Mich App 492, 498; 280 NW2d 569 (1979). The single infraction involved in

*Konyha, supra,* sleeping through a nonemergency roll call which was found not to justify discharge, was significantly less serious than the eight infractions underlying the discharge of plaintiff herein. Those infractions involved plaintiff's repeated abandonment of his assigned post before his shift had ended, reporting to a shift to which he was not assigned, and disrupting the briefing sessions for that shift.

Affirmed. Costs to appellees.