**RAPID CITY EDUCATION ASSOCIA-TION, on Behalf of Donald KECHELY, Plaintiff and Appellee,**

**v.**

**RAPID CITY SCHOOL DISTRICT # 51–4, Defendant and Appellant.**

Nos. 16175, 16182.

Supreme Court of South Dakota.

Argued Oct. 12, 1988.

Decided Dec. 14, 1988.

Thomas E. Simmons of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for defendant and appellant.

Linda Lea M. Viken of Finch, Viken, Viken & Pechota, Rapid City, for plaintiff and appellee.

SABERS, Justice.

The Rapid City School District (District) appeals a circuit court order affirming a decision of the South Dakota Department of Labor (Department) upholding a grievance filed by the Rapid City Education Association (Association) on behalf of Donald Kechely (Kechely).

*Facts*

Kechely was assigned to Stevens High School in Rapid City, South Dakota, as a vocational teacher for the 1985–86 school year. His assigned schedule required that he teach three classes of auto mechanics, each class consisting of two ordinary class periods of 45 minutes.* Upon receiving his class schedule, Kechely, through the Association, filed two grievances with the District. One grievance was filed pursuant to the grievance provisions of the Collective Bargaining Agreement (Agreement) between the District and the Association. The other grievance was filed under SDCL 3–18–15.3 and the grievance procedures in ARSD 47:02:04. Both grievances were based upon a 1981 District policy, GCK, which provided for a standard teaching load of five class periods. Kechely sought a twenty-percent salary increase because of his six-period schedule.

The Board of Education of the School District denied Kechely's grievances. Kechely appealed to the Department. The Department held that none of the terms of the Agreement had been violated but that Policy GCK was a proper basis for a statutory grievance. The Department further found that Policy GCK had been violated by the District and awarded Kechely a ten-percent salary increase of $2,649.16. The circuit court affirmed. Both the District and Kechely appealed. We reverse and deny Kechely's award.

1. *Violation of Agreement.*

■ The teaching day is provided for in Article VIII of the Agreement:

A. The normal school day, exclusive of time necessarily required to perform extra-duty and extra-curricular assignments, shall be seven (7) hours of duty in length. *The actual period of time assigned for such duty hours shall be made by the building principal or other appropriate supervisor and shall be adjusted to meet the needs of the department, division or level (elementary, junior high or senior high) to which the teacher has been assigned.*

B. Except in cases of emergency or unusual circumstances, ... all teachers shall be entitled to a minimum of a one-half (½) hour duty free uninterrupted lunch period. (emphasis added).

Under the Agreement, teachers working within the seven-hour day are to be paid in accordance with the salary levels in the appendices. These rates vary according to a teacher's education and experience. The Agreement does not provide varying salary rates for different class schedules or classloads within the seven-hour day. The only exception is a provision providing additional pay for certain extra-curricular activities, such as coaching.

Kechely's schedule fit within the seven-hour teaching day. His schedule included both a one-half hour, duty free lunch and a one hour class preparation time. Within his seven-hour teaching day, he received four 15 minute intervals or breaks between classes. As indicated, two 15 minute intervals were eliminated by his assigned schedule, but this was not prohibited by the Agreement. Kechely was not assigned any extra-curricular activities and was paid according to his education and experience

---

* Kechely was assigned two classes in the morning and one in the afternoon. Each class contained two 45 minute class periods. His daily schedule was 8:00 a.m. to 11:45 a.m. and 1:15 p.m. to 3:00 p.m. He had a one-half hour lunch break and one hour class preparation period from 11:45 a.m. to 1:15 p.m. Except for two 15 minute intervals or breaks after class periods which were omitted, all the above were within the seven-hour day.

under the Agreement's salary schedule. Thus, Kechely did not establish a grievance under the Agreement.

### 2. *Statutory grievance.*

■ The Agreement sets out a grievance procedure as required in SDCL 3–18–15.1, but specifically limits grievances to the terms of the Agreement. The Agreement defines grievance as a "complaint by a teacher, or teachers, employed by the District, that there has been a violation, misinterpretation or inequitable application of any of the terms of this Agreement[.]"

Article I of the Agreement further provides:

[T]he parties hereto understand and agree that any individual teacher, or group of teachers, shall have the right at any time to present grievances to the District and to have such grievances adjusted without the intervention of the Association as long as the adjustment is not inconsistent with the terms of this agreement, and provided the Association has been given the opportunity to be present at such adjustment.

Kechely argues that notwithstanding this provision, a statutory grievance is available under SDCL 3–18–15.3, which provides:

If no grievance procedure is enacted as provided in § 3–18–15.1, the department of labor shall promulgate such rules and regulations as may be appropriate and adopt a standard grievance procedure to carry out the provisions of § 3–18–15.1. Such procedures will thereby be established as if the said governing officer and board had adopted the same.

Kechely alleges that the District violated Policy GCK but failed to provide a procedure to resolve a violation of the policy. He argues that this illegally limited his statutory grievance rights. Kechely cites SDCL 3–18–1.1 in support of this argument, which defines a grievance as:

[A] complaint by a public employee or group of public employees based upon an alleged violation, misinterpretation, or inequitable application of any existing agreements, contracts, ordinances, policies, rules or regulations of the ... pub-

lic schools, ... as they apply to the conditions of employment.

Kechely claims that this statute provides a much broader definition of grievance than the Agreement. Since the Agreement limits grievances to its terms, Kechely argues that the District has not provided a full grievance procedure as contemplated by the legislature under the provisions of SDCL ch. 3–18. The Department and circuit court agreed with these arguments by Kechely. In affirming the Department, the circuit court stated:

The broadness of the grievance laws in South Dakota give the impression that our Legislature wanted to grant the greatest possible leeway to individual public employees to express a complaint on conditions of employment. The statutes do not address instances where a public body and an employee representative create a grievance procedure limiting grievances to the terms of the agreement, and hence leaving out grievable issues allowed by statute. Yet a liberal reading to the statutes suggests that public policy overrules contractual agreements depriving public employees of grievances allowed by law. (footnote omitted).

The circuit court's conclusion is doubtful in light of SDCL 3–18–3, which provides:

Representatives designated or selected for the purpose of formal representation by the majority of the employees in a unit appropriate for such purposes *shall be the exclusive representatives of all employees in such unit for the purpose of representation in respect to rates of pay, wages, hours of employment, or other conditions of employment;* provided that any individual employee, or a group of employees, shall have the right at any time to present grievances to their employer and to have such grievances adjusted without the intervention of the formal representative *as long as the adjustment is not inconsistent with the terms of any settlement with the formal representative then in effect,* ... (emphasis added).

Under this section, individual employees are limited to grievances not inconsistent with the terms of the Agreement. SDCL ch. 3–18 does not require that specific terms relating to "conditions of employment" be included in the negotiated agreement. Instead, the District and the Association may negotiate any terms they believe should be included as conditions of employment in the agreement. If a matter, although potentially grievable under the statutes as a condition of employment or as a matter affecting a condition of employment, is inconsistent with the agreement, it is limited by the terms of the agreement under SDCL 3–18–3.

Kechely's statutory grievance claim under SDCL 3–18–15.3 appears to be precluded by SDCL 3–18–3. Article XXIII provides that *"All teachers shall be paid in accordance with the provisions of this Appendix* whether they teach in a senior or junior high school, elementary school or special school." (emphasis added). The only deviation permitted from these salary rates is extra pay for certain extra-curricular activities. Kechely's teaching day was within the seven-hour teaching day, and he does not claim that he was assigned any extra-curricular activities. Kechely's grievance simply seeks a twenty-percent pay increase above the Agreement's salary rates.

The circuit court concluded that the Agreement did not prohibit additional pay for extra classloads because "Although the Negotiated Agreement deals with stipends and additional pay for extracurricular activities, it is silent on the subject of additional pay for heavier class loads." The Agreement plainly states that "The actual period of time assigned for such duty hours shall be made by the building principal or other appropriate supervisor and … adjusted to meet the needs of the department, division or level[.]" The Agreement is clear that all assigned duty hours within the seven-hour school day are within the discretion of the District. The only exception is certain extra-curricular activities in Article VIII for which extra compensation is provided under the Agreement. Thus, Kechely's grievance for additional compensation for a larger classload is inconsistent with the terms of the Agreement and precluded by SDCL 3–18–3.

In its liberal reading of the grievance statutes, the circuit court failed to consider the reason for the "broadness of the grievance laws" under SDCL ch. 3–18. The grievance provisions are not written solely for unionized, public employees who negotiate a collective bargaining agreement through an exclusive representative. They are equally applicable to grievances filed by other public employees. Public employees who are unable to bring a grievance under the terms of a collective bargaining agreement need a broader definition of grievance in order to claim violations of contracts, ordinances, policies, rules, etc.

Kechely also relies on SDCL 3–18–15, which provides in part:

Nothing contained in this chapter shall be construed to limit, impair or affect the right of any public employee or his or her representative to the expression or communication of a view, grievance, complaint or opinion on any matter related to the conditions or compensation of public employment or their betterment, …

Kechely would read this provision to prohibit any limitation upon an employee's right to bring a grievance under SDCL ch. 3–18. Such an interpretation would nullify the provisions of SDCL 3–18–3, which clearly limits an employee's grievance rights. A better interpretation of SDCL 3–18–15 is that suggested by the District. The prohibition against limitations on "expression or communication" appears aimed at protecting the individual or collective right of free speech. This interpretation is consistent with recent challenges to an association's exclusive representation of public employees. *Minnesota State Board for Community Colleges v. Knight*, 465 U.S. 271, 104 S.Ct. 1058, 79 L.Ed.2d 299 (1984).

SDCL 3–18–3 recognizes the Association's exclusive right to bargain for all the conditions of employment. This right is also recognized by the parties under their Agreement, which provides:

[This is] a complete agreement covering rates of pay, wages, hours of employment and other conditions of employment, ...

WHEREAS, the parties do hereby acknowledge that this agreement is the result of the unlimited right and opportunity afforded each of the parties to make *any and all* demands and proposals with respect to the rates of pay, wages, hours of employment and other conditions of employment with respect to the unit of employees covered hereby, ... (emphasis added).

Both parties concede that the Agreement is binding as to all its terms. The statutes also recognize the binding effect of collective agreements between the employee's exclusive representative and a public entity. To permit Kechely's statutory grievance under these circumstances would frustrate the collective bargaining process and the binding effect of agreements recognized in SDCL ch. 3–18.

### 3. *Whether Policy GCK was binding and controlling.*

■ *Schnabel v. Alcester School Dist.,* 295 N.W.2d 340 (S.D.1980) provides that policies of a school district have the force and effect of law and are binding upon the school district. However, as other courts have recognized, "this principle applies only to rules which evince an intent of the agency to establish mandatory rules which must be followed by the agency." *Golembiowski v. Madison Heights Civil Service Commission,* 128 Mich.App. 682, 687, 341 N.W.2d 793, 796 (1983).

Policy GCK states that "The standard load for all secondary teachers, both senior high school and junior high school, shall be five (5) periods of classroom instruction[.]" Kechely argues that the word "shall" is mandatory, and creates a binding rule upon the District. However, when read in its entirety, the policy indicates otherwise. Policy GCK states that the five-period load is the standard load, not the maximum load. Further, there is no indication that teachers carrying in excess of a five-period load should receive additional compensation or other remedy. This policy appears to be a guideline which permits deviation. Such deviation is recognized by other language in Policy GCK, which provides:

[T]he Administration and the Board recognize the need for cooperation and are willing to cooperate in the development of new and better educational methods and environments which may involve departures from the traditional structure of the school, including its methods and classroom sizes which may be contrary to existing policies governing instructional load.

Therefore, the policy is neither binding nor controlling in this instance.

Kechely also argues that a past practice of additional compensation for a six-period schedule creates an inference that the District violated a binding policy. Kechely presented evidence of an instance in 1975 where an elementary teacher was paid an additional twenty percent for a six-period schedule. That situation differed in that the teacher taught both math and science and had to individually prepare for six classes instead of three. Further, there is no indication what policies or agreements were in effect in 1975. Policy GCK did not come into effect until 1981. Thus, we cannot say the District violated a binding policy in deviating from Policy GCK.

We reverse.

WUEST, C.J., and MORGAN and MILLER, JJ., concur.

HENDERSON, J., concurs with a writing.

HENDERSON, Justice (concurring).

Briefing in this case and argument before the Court reveals a difference of opinion between opposing counsel on the scope of review. Counsel for appellee suggests, in her briefing, that this Court should give deference to the Department of Labor because of its expertise and a "resolution of factual issues" which falls within that expertise. It appears to this special writer that we are reviewing the case on questions of law. Therefore, no deference should be given to the expertise of the

Department of Labor which upheld a grievance herein and was thereafter affirmed by the circuit court. Rather, our scope of review should be *Permann v. Department of Labor, Unemployment Ins. Div.*, 411 N.W.2d 113 (S.D.1987); *In re Guardianship of Viereck*, 411 N.W.2d 102, 107 (S.D. 1987) (see special concurrence of Henderson, J., citing *Pullman–Standard v. Swint*, 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982); *Inwood Labs. v. Ives Labs.*, 456 U.S. 844, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982); *Zenith Radio Corp. v. Hazeltine Research*, 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969); *United States v. United States Gypsum Co.*, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). We accord no deference to the conclusions of law reached by the Department of Labor or the circuit court.

Agreeing with the rationale of my colleague, Justice Sabers, very pointedly I wish to augment his conceptualization by this remark: The Department of Labor erred in awarding appellee a 10% salary increase in extra pay because appellee applied himself for the agreed 7–hour day, a normal school day; it appears that an award for more than a 7–hour day would increase his salary over the agreed salary schedule found in the Appendix of the Collective Bargaining Agreement.