**RAPID CITY EDUCATION ASSOCIATION, Petitioner and Appellee,**

v.

**RAPID CITY SCHOOL DISTRICT NO. 51–4 and its Board of Education, Appellant.**

No. 18262.

Supreme Court of South Dakota.

Argued Oct. 4, 1993.

Reassigned April 14, 1994.

Decided Oct. 5, 1994.

Rehearing Denied Nov. 10, 1994.

Linda Lea M. Viken of Viken, Viken, Pechota, Leach & Dewell, Rapid City, for appellee.

Thomas E. Simmons of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for appellant.

James F. Shekleton, South Dakota Bd. of Regents, Pierre, amicus curiae.

AMUNDSON, Justice (on reassignment).

Rapid City School District No. 51–4 (District) appeals from the circuit court's judgment affirming the South Dakota Department of Labor's (Department) decision that District committed an unfair labor practice by implementing its last offer into its employment agreement with Rapid City Education Association (Association) after reaching an impasse in negotiations. We reverse.

## FACTS

Association is the exclusive representative of classroom, special education, resource and television teachers, counselors, librarians and nurses employed by District. After expiration of a three-year employment agreement in 1991, District engaged in collective bargaining with Association. Following extensive negotiations, an impasse was declared and District implemented the provisions of its last offer into the negotiated agreement in accordance with SDCL 3–18–8.2.[1] This implementation included the definition of

---

1. SDCL 3–18–8.2 provides:

Any school district issuing contracts to teachers for the ensuing year, but prior to reaching agreement with the representatives of the recognized ·employee unit, shall issue the contracts under the same terms and conditions as for the current year. If no agreement is reached in negotiations and the intervention of the labor department under § 3–18–8.1 fails to bring about an agreement, the board shall implement, as a minimum, the provisions of its last offer, including tentative agreements. If the labor department is not requested to intervene under the provisions of § 3–18–8.1, the board shall implement the provisions of its last offer, including tentative agreements, eleven days after an impasse is declared.

"grievance" as negotiated in past negotiations between the parties.[2] Association sought to implement the broader definition of "grievance" contained in SDCL 3–18–1.1.[3] This prior negotiated definition limits grievances to "violations, misinterpretations or inequitable applications of any of the terms" of the negotiated agreement.

As a result of the failed negotiations, Association filed an unfair labor practice complaint with Department alleging District did not bargain in "good faith" as required by SDCL 3–18–2 and 3–18–3.1(1), (5) & (6). After considering stipulated facts and written arguments, Department held that District committed an unfair labor practice in violation of SDCL 3–18–3.1(1) and (6)[4] by implementing a definition of grievance more restrictive than provided by SDCL 3–18–1.1. Department's rationale was that this implementation interfered with and restrained employees in the exercise of their rights guaranteed by law. District was ordered "to remove this language from the Negotiated Agreement, and in the absence of an agreement by the parties, the statutory definition will be used."

District appealed to the circuit court. On December 18, 1992, the circuit court, after considering oral and written arguments, issued an oral decision affirming Department's ruling. District appeals from this decision.

## ISSUE

Whether District committed an unfair labor practice by implementing a definition from its last offer into the negotiated agreement after reaching an impasse with Association?

## STANDARD OF REVIEW

 Our review of an agency's actions is controlled by SDCL 1–26–36. If an appeal of an administrative agency's decision in a contested matter is taken to circuit court and the final judgment of that court is appealed to this court, we make the same review of the agency's actions as did the circuit court. *Caldwell v. John Morrell & Co.*, 489 N.W.2d 353, 357 (S.D.1992). When the issue is a question of fact, the agency's actions are reviewed under the clearly erroneous standard and, when the issue is a question of law, the actions are fully reviewable. *Egemo v. Flores*, 470 N.W.2d 817 (S.D.1991); *Permann v. Dept. of Labor, Unemp. Ins. D.*, 411 N.W.2d 113 (S.D.1987). Since this case was submitted on stipulated facts, we are not bound by the clearly erroneous standard but, rather, we must consider whether the agency made a mistake of law. *Robert L. Carr Co. v. City of Sioux Falls*, 416 N.W.2d 602 (S.D. 1987).

## DECISION

██ The sole issue[5] in this case is whether District committed an unfair labor prac-

---

2. In 1990, a circuit court reversed a Department of Labor decision when it ruled the District did not commit an unfair labor practice by retaining the prior definition of "grievance" after an impasse was reached in a limited renegotiation. This decision was never appealed.

3. SDCL 13–18–1.1 provides:

The term "grievance" as used in this chapter means a complaint by a public employee or group of public employees based upon an alleged violation, misinterpretation, or inequitable application of any existing agreements, contracts, ordinances, policies or rules of the government of the state of South Dakota or the government of any one or more of the political subdivisions thereof, or of the public schools, or any authority, commission, or board, or any other branch of the public service, as they apply to the conditions of employment. Negotiations for, or a disagreement over, a nonexisting agreement, contract, ordinance, policy or rule is not a "grievance" and is not subject to this section.

4. SDCL 3–18–3.1(1) and (6) provides:

It shall be an unfair practice for a public employer to:

(1) Interfere with, restrain or coerce employees in the exercise of rights guaranteed by law;

(6) Fail or refuse to comply with any provision of this chapter.

5. Although the South Dakota Board of Regents, as amicus, argues that the grievance definition is a negotiable term which is not preempted by statute, we deem it improper for amicus to seek to widen the issues raised by the parties. *Lyons v. Lederle Laboratories*, 440 N.W.2d 769, 770 (S.D.1989). The negotiability of the grievance definition was not an issue presented to the Department or trial court, therefore, the issue will not be considered in this appeal but may be considered if properly presented in the future. *Oesterreich v. Canton–Inwood Hospital*, 511 N.W.2d 824 (S.D.1994).

tice when it implemented the definition of "grievance" from its last offer into a new negotiated agreement rather than implementing the statutory definition of SDCL 3–18–1.1.

South Dakota law requires negotiations between governmental agencies and employee organizations or representatives to be conducted in good faith; however, such obligation does not compel either party to agree to a proposal or make a concession. SDCL 3–18–2, 3.1, & 3.2. "If a settlement is reached with a labor or employee organization . . . and the governing body, such governing body shall implement the settlement in the form of an agreement." SDCL 3–18–8.

During negotiations District offered the prior negotiated agreement's definition of grievance. Association requested that the statutory definition replace this original definition. Negotiations commenced and eventually ended in impasse. At that point, District implemented the terms of its last offer via SDCL 3–18–8.2 which provides: "Any school district issuing contracts to teachers for the ensuing year, but prior to reaching agreement with the representatives of the recognized employee unit, *shall* issue the contracts under the same terms and conditions as for the current year." (Emphasis added.) Also, as in this case, "[i]f no agreement is reached in negotiations and . . . the labor department is not requested to intervene . . . the [District] *shall* implement the provisions of its last offer, including tentative agreements, eleven days after an impasse is declared." SDCL 3–18–8.2 (emphasis added).

Despite the clear requirements of SDCL 3–18–8.2, the Department and circuit court ruled that District committed an unfair labor practice by implementing its last offer which was derived from the previous contract. Association argues that "it is entitled, as a matter of law, not to be forced to agree to a limitation of the rights of its members." It claims, as Department and circuit court held, that the statutory definition under SDCL 3–18–1.1 provides Association members with the right to bring a complaint for any of the reasons listed therein which cannot be modified without an agreement of the parties.

Nothing in SDCL ch. 3–18 requires a negotiated agreement's definition be as broad as SDCL 3–18–1.1 and nothing prohibits a definition which limits grievances to the terms of a negotiated agreement. This is not the first time these parties have been before this court litigating a grievance issue. In *Rapid City Education Association on Behalf of Kechely v. Rapid City School District 51–4*, 433 N.W.2d 566, 569 (S.D.1988), this court held:

> . . . SDCL ch. 3–18 does not require that specific terms relating to "conditions of employment" be included in the negotiated agreement. Instead the District and the Association may negotiate any terms they believe should be included as conditions of employment in the agreement. If a matter, although potentially grievable under the statutes as a condition of employment or as a matter affecting a condition of employment, is inconsistent with the agreement, it is limited by the terms of the agreement under SDCL 3–18–3.

. . . .

In its liberal reading of the grievance statutes, the circuit court tried to consider the reason for the "broadness of grievance laws" under SDCL ch. 3–18. The grievance provisions are not written solely for unionized, public employees who negotiate a collective bargaining agreement through an exclusive representative. They are equally applicable to grievances filed by other public employees. Public employees who are unable to bring a grievance under the terms of a collective bargaining agreement need a broader definition of grievance in order to claim violations of contracts, ordinances, policies, rules, etc.

Does this precedent tell public employers and public employees that the definition of grievance is not a proper subject for negotiation? A fair reading of *Kechely* would be that a definition of grievance is a proper subject for negotiations. By virtue of the parties' inability to reach agreement on this subject, District was required under SDCL 3–18–8.2 to implement its last offer into the final agreement. District is not required to

make concessions on subjects submitted for negotiations. SDCL 3–18–2. This mandated implementation of a subject placed on the negotiation table by the parties cannot constitute an unfair labor practice under this set of facts. Any other interpretation would render SDCL 3–18–8.2 meaningless. There is a presumption against a construction which would render a statute ineffective or meaningless. *Nelson v. Sch. Bd. of Hill City Sch. Dist.*, 459 N.W.2d 451, 455 (S.D.1990).

We reverse.

MILLER, C.J., and SABERS, J., concur.

WUEST, J., and CALDWELL, Circuit Judge, dissent.

CALDWELL, Circuit Judge, sitting for HENDERSON, Retired Justice, disqualified.

KONENKAMP, J., not having been a member of the Court at the time this matter was submitted to the Court did not participate.

CALDWELL, Circuit Judge (dissenting).

I respectfully dissent. The practical result of the majority opinion allows the District to prevail in every case where the definition of grievance is in issue. The definition of grievance is defined by statute and should not be subject to negotiation.

In an earlier case involving these same parties, a teacher in the Rapid City School District filed a grievance based upon a school policy that was inconsistent with the negotiated agreement then in effect. *Rapid City Education Association on Behalf of Kechely v. Rapid City School District 51–4*, 433 N.W.2d 566 (S.D.1988). That agreement contained the same restrictive definition of "grievance" at issue in this case. This Court held that the contract definition was binding because the parties had exercised their unlimited rights and opportunities in effectuating the final contract. Therefore, grievances over matters not covered by the agreement

were precluded. *Kechely*, 433 N.W.2d at 569–70. To hold for Kechely, the court noted, "frustrates the collective bargaining process." *Kechely*, 433 N.W.2d at 570.

Here, the definition of "grievance" contained in the contract is not a product of mutual agreement. After extensive negotiations, the parties remained adamant in their positions on this issue, eventually arriving at an impasse. Neither party requested the intervention of Department. District then unilaterally implemented the definition contained in its last offer pursuant to SDCL 3–18–8.2.

In *Kechely*, this Court stated that the broadness of the statutory definition of "grievance" was necessary to protect public employees who were unable to negotiate this item under a collective bargaining agreement. *Kechely*, 433 N.W.2d at 569. Following that decision, District cites *Kechely* as the rationale for the unilateral implementation of its proposed grievance definition. In *Rapid City Education Association v. Rapid City School District*, HF No. 3U 1990/91 & HF No. 3U 1991/92, Department found this rationale sufficient to satisfy the good faith bargaining requirement of SDCL 3–18–3.1(5), precluding a claim of bad faith negotiations by Association. Thus, District can continue to offer its restrictive definition in future negotiations, and upon arriving at an impasse, unilaterally implement it in good faith. Under these circumstances, the employees represented by Association are in a worse position than unrepresented public employees. This result also frustrates the collective bargaining process. *See Kechely*, 433 N.W.2d at 570.

The definition of "grievance" is distinguishable from other subjects which can be negotiated in the context of public employment contracts. SDCL 3–18–3 includes "rates of pay, wages, hours of employment, or other conditions of employment" as the appropriate subjects for negotiation.* Beyond minimum

---

* In *Rapid City Education Ass'n v. Rapid City Area School Dist. No. 51–4*, this Court further refined the terms and conditions of employment which are subject to negotiation. Adopting the analysis applied by the Supreme Court of New Jersey in *In re Local 195, IFPTE, AFL–CIO v. State*, 88 N.J.

393, 443 A.2d 187 (1982), we subject an issue to the following three-part test:

First, a subject is negotiable only if it 'intimately and directly affect[s] the work and welfare of public employees....'

wage regulations, most "other" conditions of employment are not covered by statute. In the event of an impasse in negotiations, a public employer is bound to implement its last offer. The purpose of this requirement is to protect employees from ending up with no agreement regarding wages, hours or other conditions of employment. In contrast, the South Dakota legislature has specified the issues which are amenable to grievance proceedings in SDCL 3–18–1.1.

The statutory definition of "grievance" preempts negotiation on this item. The District committed an unfair labor practice by unilaterally implementing a more restrictive definition in its contract and in failing to follow the directive of SDCL 3–18–1.1. The circuit court's decision should be affirmed.

I am hereby authorized to state that WUEST, J., joins this dissent.

Second, an item is not negotiable if it has been preempted by statute or regulation ...
Third, a topic that affects the work and welfare of public employees is negotiable only if it is a matter 'on which negotiated agreement would not significantly interfere with the exercise of inherent management prerogatives pertaining to the determination of governmental policy.' *Rapid City Educ. Ass'n*, 376 N.W.2d 562, 564 (S.D.1985).