KONYHA v MOUNT CLEMENS CIVIL SERVICE COMMISSION

Docket No. 54919. Argued November 5, 1974 (Calendar No. 10.)— Decided January 21, 1975.

Steven Konyha, a fireman of the Mt. Clemens Fire Department, was discharged for sleeping through a roll call immediately before a change in shift. The Mt. Clemens Civil Service Commission found this disciplinary action "justified". The Macomb Circuit Court, George R. Deneweth, J., affirmed, holding that the chief of the department and the Civil Service Commission could properly consider uncharged incidents of misconduct more than 90 days old in determining the extent of punishment. The Court of Appeals, J. W. Fitzgerald, P. J., and V. J. Brennan and O'Hara, JJ., affirmed (Docket No. 15154). Plaintiff appeals. *Held:*

1. The firemen and policemen's civil service act, which provides that all charges against a policeman or fireman shall be void unless filed within 90 days of the date of the violation, precludes an appointing authority from considering uncharged allegations of employee misconduct when disciplining a fireman or policeman.

2. The punishment imposed for the infraction, even when it is viewed together with a prior infraction for which Konyha had been disciplined, was too severe.

3. The cause is remanded to the Mt. Clemens Civil Service Commission for reconsideration of the appropriate discipline for sleeping through a roll call.

1. ADMINISTRATIVE LAW—FIREMEN AND POLICEMEN'S CIVIL SERVICE ACT—MISCONDUCT—DISCIPLINE.

The firemen and policemen's civil service act, which provides that all charges against a policeman or fireman shall be void unless filed within 90 days of the date of the violation, precludes an appointing authority from considering uncharged allegations of employee misconduct when disciplining a fireman or policeman (MCLA 38.514).

REFERENCE FOR POINTS IN HEADNOTES
[1-4] 15 Am Jur 2d, Civil Service §§ 6, 8.

2. ADMINISTRATIVE LAW—FIREMEN AND POLICEMEN'S CIVIL SERVICE
    ACT—DISCIPLINE.

   The purpose of the firemen and policemen's civil service act is to
   provide job security for policemen and firemen; under it disci-
   pline may not be imposed because of vague misgivings about
   performance but is justified only for cause (MCLA 38.501 *et
   seq.).*

3. ADMINISTRATIVE LAW—FIREMEN AND POLICEMEN'S CIVIL SERVICE
    ACT—DISCIPLINE—PUNISHMENT.

   Permitting consideration, for the purpose of assessing punish-
   ment in disciplinary proceedings under the firemen and police-
   men's civil service act, of charges not brought which could not
   be brought because more than 90 days old, could permit justifi-
   cation of any discipline, including discharge, for any infraction
   of any rule, in derogation of the job security which was the
   purpose of the statute (MCLA 38.501 *et seq.).*

4. ADMINISTRATIVE LAW—FIREMEN AND POLICEMEN'S CIVIL SERVICE
    ACT—DISCIPLINE.

   Failure of a fireman to be present at a routine roll call because
   he slept through it did not impair or potentially impair the
   safety of anyone sufficiently to justify the extreme punishment
   of discharge, even when viewed together with a prior infraction
   for which the fireman had been suspended for two days, sleep-
   ing through an emergency alarm, which could jeopardize the
   safety of the community and of the fireman's fellow officers
   (MCLA 38.514).

*Leonard C. Jaques, P. C. (Kenneth A. Webb,* of
counsel), for plaintiff.

*Daner, Freeman, McKenzie & Matthews, P. C.*
(by *Kenneth E. Scherer),* for defendant.

LEVIN, J. Steven Konyha seeks reinstatement
with back pay as a fireman with the Mt. Clemens
Fire Department.

Konyha was discharged by the chief of the de-
partment for sleeping through a roll call immedi-
ately before a change in shift.

The Mt. Clemens Civil Service Commission found this disciplinary action "justified".[1]

The circuit court affirmed after affirmatively resolving the propriety of the chief's and the commission's consideration of Konyha's prior conduct as a fireman in determining the extent of punishment.

The Court of Appeals in an unpublished memorandum opinion affirmed stating that the "determination of defendant Commission was based upon competent, material and substantial evidence on the whole record. Const 1963, art 6, § 28."[2]

We hold that the firemen and policemen's civil service act ("all charges [against a policeman or fireman] shall be void unless filed within 90 days of the date of the violation".)[3] precludes an appointing authority from considering uncharged allegations of employee misconduct when disciplining a fireman or policeman.

The cause is remanded to the Mt. Clemens Civil Service Commission for reconsideration of the appropriate discipline for sleeping through a roll call.

I

The act provides job security for firemen and policemen during "good behavior and efficient service". Firemen and policemen may be disciplined, including discharge, "for incompetency, inefficiency, dishonesty, drunkenness, immoral conduct,

---

[1] MCLA 38.514; MSA 5.3364; requires the "removing officer" to "justify" his disciplinary action at a hearing before the Civil Service Commission.

[2] *Viculin v Department of Civil Service,* 386 Mich 375; 192 NW2d 449 (1971); *Peterson v Department of Natural Resources,* 392 Mich 68; 219 NW2d 34 (1974).

[3] MCLA 38.514; MSA 5.3364.

insubordination, discourteous treatment to the public, neglect of duty, violation of the provisions of this act or the rules of the commission, or any other failure of good behavior, or any other acts of misfeasance, malfeasance or nonfeasance in office".[4]

Konyha and the other men on duty had shared watches throughout the night. When Konyha's watch terminated at 4 a.m., he awakened John Pieknik, another firefighter, to take over the watch. Konyha then did his laundry, showered, and eventually went to sleep. At 6:30 a.m. Pieknik said over the public address system: "Time to get up", and repeated it again:

> "*Q.* You said, 'time to get up, time to get up?'
> "*A.* Yes."

Konyha testified he did not hear this wakeup call.

A lieutenant sleeping in the dormitory testified that he was awakened by the public address system; he was not asked, and did not say, whether he attempted to awaken Konyha.

When Konyha failed to report at 7 a.m. for the roll call, the chief and the lieutenant went to awaken him. The chief testified that Konyha, upon being awakened, admitted that he had heard the wakeup signal and then went back to sleep.[5] The commission asserts that this "admission" indicates "willful" misconduct.

Konyha's infraction occurred on August 28,

---

[4] MCLA 38.514; MSA 5.3364.

[5] Konyha denied making that statement. He testified that he only told the chief that he should not have gone to sleep after finishing his chores because he was a heavy sleeper. The lieutenant could not verify the statement attributed by the chief to Konyha because, according to the chief, the lieutenant left as soon as they saw Konyha in bed and was not present for the statement.

1970. The chief, on September 25, after "quite a period of consideration", presented Konyha his "notice of discharge".[6] The notice characterized Konyha's failure to be at "roll call on the on-coming and off-going platoons" as "a neglect of duty".

Konyha had failed timely to respond to an emergency alarm due to oversleeping on April 2, 1970. He was formally charged and disciplined with a two-day suspension.

The September 25 notice of discharge charges that Konyha's failure to respond to the roll call on August 28, together with the previous oversleeping charge, "exhibits a pattern on Mr. Konyha's part which endangers the lives and properties of the citizens of Mount Clemens and also his fellow firefighters".

The chief's discharge of Konyha and the commission's validation of his action were not based solely on the specifications of the charge. Konyha had been with the department for three years and the chief considered his "whole file", "his whole record" in reaching his decision.

Apart from the April, 1970 suspension, Konyha had neither been charged nor disciplined for any of these other purported incidents. Allegedly, on June 18, 1969, a little over a year before the August 28 incident, Konyha had slept through another roll call. Although the chief wrote Konyha a letter concerning the incident, formal charges were not filed. The chief, with the benefit of hearsay, also testified to other instances of Konyha oversleeping: "I had been informed, though, that

---

[6] The charge improperly states that Konyha had been awakened by the lieutenant and had then gone back to sleep. The chief testified that the lieutenant told him that he, the lieutenant, had awakened Konyha, but subsequently told him that was not true.

Mr. Konyha was sleeping right up to roll calls and through roll calls by his officer in charge at that time".

It appears that the chief's discharge of Konyha was predicated not only on this particular missed roll call and the earlier infraction, but rather was motivated by a general dissatisfaction—not charged—with Konyha's performance. Konyha had failed to achieve a step increase given those "showing normal progress". His advance was delayed "because of his lack of initiative and lack of performing his duties here in the station."

Konyha's counsel continually objected to introduction and consideration of testimony regarding alleged incidents and matters not included in the charge and, citing the statute, objected to testimony about uncharged incidents more than 90 days old.

The City Attorney argued the propriety of considering Konyha's entire performance as a fireman: "It is not a single incident. It is a group of activities. * * * I don't feel that the Civil Service Act prevents the overall conduct of an employee from coming to the attention of a Civil Service Commission merely because there was no complaint or no specific charge filed with the Civil Service Commission. * * * The nature of the discipline is dependent upon the overall behavior of the respondent, as of necessity it must be. * * * He's being disciplined, he's being disciplined on the basis of his overall conduct as a fireman."

The chairman of the commission ruled the testimony admissible: "I think that the entire record of the man, as far as his performance of the duties of a fireman, have to go to the final determination by the chief".

## II

The statute reads:

"Provided, however, no member of any fire or police department within the terms of this act shall be removed, discharged, reduced in rank or pay, suspended or otherwise punished except for cause, and in no event until he shall have been furnished with a written statement of the charges and the reasons for such actions, and *all charges shall be void* unless filed within 90 days of the date of the violation, except in the case of a probationer, whose violations may accumulate for the probationary period." (Emphasis supplied.)[7]

The circuit court construed this language as a statute of limitations prohibiting the *bringing* of charges for infractions more than 90 days old. The commission contends that earlier charges are void only to the extent that they "cannot be used to prove present charges" but are viable and "relevant in determining [the] penalty that should be imposed for a proven violation".

The purpose of the act is to provide job security for policemen and firemen. Discipline may not be imposed because of vague misgivings about performance. Discipline is justified only "for cause". A written statement of charges and the reasons for the disciplinary action must be furnished. The appointing/removing authority bears the burden of justifying its action.

Permitting consideration, for the purpose of assessing punishment, of charges not brought within 90 days would expose policemen and firemen to discharge for any infraction of any rule. Whenever there is an adjudicated violation—and almost everyone can be found guilty of violation of some rule

---

[7] MCLA 38.514; MSA 5.3364.

or regulation—the appointing/removing authority could "justify" any discipline, including discharge, on the basis of the offender's "whole file".

The statutory language and legislative purpose renders the sentencing analogy inapposite. Permitting an appointing/removing authority to justify the imposition of discipline on the basis of the "whole file"—not charged and which *could not be charged* because antedating 90 days—would be to allow it to say one thing and do another; that is, to allow it to say that Konyha was discharged for missing the roll call but, since discharge is clearly excessive and cannot be "justified", to allow it to in fact discharge him because of general dissatisfaction with his performance, in derogation of his legislatively granted job security.

### III

The circuit court relied on *Town of West New York v Bock,* 38 NJ 500; 186 A2d 97 (1962) as supporting the commission's consideration of Konyha's "whole file".[8] Bock, a fireman, was formally charged with tardiness on three separate, but recent (within the preceding three to four weeks) instances. Evidence was presented of prior instances of tardiness. In some, Bock was charged, his guilt determined and punishment assessed[9] while, in others, "some trivial, some serious", the charge had not been adjudicated or substantiated. On review, Bock's discharge by the appointing authority was reduced to 15 months suspension by

---

[8] The court cited two other cases. Both *(NLRB v Harrah's Club,* 403 F2d 865 [CA 9, 1968] and *Local No. 1424, International Association of Machinists v NLRB,* 362 US 411; 80 S Ct 822; 4 L Ed 2d 832 [1960])* concern a six-month statute of limitation for filing unfair labor practice charges under the NLRA and are not relevant.

[9] Severest punishment—15-day suspension.

the commission and further lowered to 6 months by an appellate court.[10]

In considering the town's appeal challenging the insufficiency of the six-months suspension—Bock did not cross-appeal—the New Jersey Supreme Court stated that an employee's "past record", although inadmissible to "prove a present charge * * * may be resorted to for guidance in determining the appropriate penalty for the specific offense".

Significant statutory differences preclude our relying on the New Jersey Court's dictum.[11] The *Bock* Court did not construe a statute that renders void "all charges" not "filed within 90 days of the date of the violation". The pertinent New Jersey statute[12] provided that the Civil Service Commission hearing "shall be for the purpose of fairly determining whether the employee involved, by reason of his act as charged and his *record of service,* merits continuance therein or should be removed therefrom or otherwise disciplined for the good of the service". (Emphasis supplied.)

IV

In *Brown v Department of State Police,* 392 Mich 811 (1974), we set aside the discharge of a

[10] 71 NJ Super 143; 176 A2d 527 (1961).

[11] Bock's "past record" was not considered. The adequacy of the suspension was judged solely on the then *charged* three instances of tardiness.

"There was no adjudicated disciplinary action more recent than one occurring approximately 7 years before the hearing. There was no proof that the log entries of prior tardiness had been admitted by him. And, there was no competent evidence of any recent warnings. So the case must stand, with respect to penalty, only on Bock's guilt of the three instances specifically charged." *Town of West New York v Bock,* 38 NJ 500, 524; 186 A2d 97, 110 (1962).

[12] RS 11:15-5, NJSA—This statute pertained to state employees, not municipal employees. The Court was uncertain whether it applied to municipal employees by incorporation. It went on to say that whatever the applicability of the statute "consideration of past record is inherently relevant." 38 NJ at 523; 186 A2d at 109.

trooper from the State Police because of procedural error, adding "[d]ischarge was manifestly an excessive and arbitrary discipline unjustified on this record" and remanded to the Civil Service Commission "for establishment of an appropriate disciplinary suspension".

One can appreciate the chief's concern that an oversleeping firefighter, causing even the slightest delay in an emergency situation, may jeopardize the safety of the community and of his fellow officers. It does not follow, however, that Konyha's failure to be present at this routine roll call impaired the safety of anyone or is sufficiently indicative of potential impairment of safety to justify this extreme punishment.

The failure to distinguish between no response to an emergency call and no response to a roll call ignores a practical distinction; the noise emanating from an emergency call is significantly louder and different in urgency than "Time to get up, time to get up" over a public address system of uncertain volume.

Konyha had been suspended for 2 days for failing timely to respond to an emergency alarm. The instant charge, sleeping through a non-emergency roll call, even when viewed together with the prior infraction, does not justify discharge.

Other firemen had missed roll calls. Konyha was the first to be discharged for that delinquency.

We remand to the Mt. Clemens Civil Service Commission to determine a proper period of suspension for Konyha and to award him the back pay to which he is entitled.

T. G. KAVANAGH, C. J., and T. M. KAVANAGH, SWAINSON, WILLIAMS, and M. S. COLEMAN, JJ., concurred with LEVIN, J.

J. W. FITZGERALD, J., did not sit in this case.