Ray C. BUCKNER, Plaintiff,

v.

**CITY OF HIGHLAND PARK, Highland Park Police Department, Robert Blackwell, Chief of Police, Terry Ford, and Lieutenant John Holloway, Defendants.**

Civ. No. 86–71300.

United States District Court,
E.D. Michigan, S.D.

March 22, 1988.

Gary A. Benjamin, Detroit, Mich., for plaintiff.

Richard L. Hurford, Detroit, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

ANNA DIGGS TAYLOR, District Judge.

. This case is before the court on the parties' renewed cross motions for summary judgment, filed pursuant to an order of this court, on plaintiff's claim that he was deprived of the due process of law guaranteed by the Fourteenth Amendment of the United States Constitution, when he was discharged from the police force of the City of Highland Park, Michigan, on November 15, 1984. Plaintiff's claim, filed pursuant to 42 U.S.C. § 1983, is that his discharge was made without adequate notice and opportunity to respond to the allegations which formed the basis for his dismissal.

### I.

Plaintiff Ray C. Buckner was employed by the Highland Park Police Department for two decades. The terms and conditions of his employment were defined by a collective bargaining agreement (CBA) between the city and his union, the Highland Park Police Officers Association.

On November 6, 1984, then-Detective Buckner went to the home of Ms. Letite Riley in order to take her statement regarding an incident in which an individual had fired a gun at her. Buckner had failed to bring the proper witness form, so he informed Ms. Riley that he would return the following day for her written statement.

Buckner returned to Riley's apartment on the evening of November 7. In a complaint filed by Riley that same night, it was alleged that at that time Buckner made sexual advances toward her, touching her breast and attempting to kiss her, and that he refused to leave despite her repeated requests. Riley's boyfriend, Lawrence Bohler, who telephoned her while Buckner was at the apartment, corroborated Riley's story, stating that he could hear Buckner and Riley arguing as she repeatedly asked Buckner to leave. Both Riley and Bohler gave written statements to Highland Park Police Chief Terry Ford.

On November 8, at about 2:00 p.m., after learning that a complaint had been lodged against him, Buckner admitted himself to the psychiatric ward of Henry Ford Hospital for the purpose of obtaining treatment for alcoholism. That same evening, at about 6:30 p.m., Lt. John Holloway and plaintiff's union representative, Officer Hubert Yopp, visited upon Buckner in the hospital ward.

Defense affidavits state that Detective Buckner was then informed of the charges against him by Ms. Riley, and that he was the subject of a criminal investigation; that he was advised of his *Miranda* rights (*Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)); and that he was asked but refused to give a statement, at which point he was suspended by Lt. Holloway.

Defendants further state that Chief Ford, at some later date, sent plaintiff's union president, Officer Charles Brookman, to obtain Buckner's account of the incident, and that plaintiff refused to give a statement to Officer Brookman as well.

Plaintiff has sworn that he refused to make a statement to Lt. Holloway on November 8 upon the advice of his union

representative, Officer Yopp, who accompanied the lieutenant. Plaintiff further avers that Officer Brookman's subsequent visit occurred approximately ten days *after* plaintiff's initial hospitalization and *after* he had already been terminated from the force.

Plaintiff was fired on November 15, 1984, when Highland Park Mayor Robert Blackwell approved a letter of recommendation by Chief Ford of that same date. Plaintiff's termination became effective the following day.

On November 26, 1984, plaintiff filed a grievance pursuant to the provisions of the CBA between his union and the city. Due to multiple adjournments, arbitration of the dispute still had not been conducted at the time of hearing on these motions for summary judgment.

## II.

Plaintiff filed a two-count complaint on March 10, 1986 in Wayne County Circuit Court (*Buckner v. City of Highland Park, et al.*, No. 86–606–587–CZ) alleging his discharge was in violation of his due process rights because no hearing was held prior to his termination, and further that the discharge violated the Michigan Civil Rights Act, M.C.L. § 37.2101 *et seq.* (Handicappers Act) because plaintiff is an alcoholic and was discharged because of that condition. The cause was removed to this court by defendants on March 31, 1986.

Following cross motions for summary judgment and a hearing, this court issued an Order on May 26, 1987, granting defendants' motion for summary judgment on the Handicappers Act claim, and denying both parties' summary judgment motions on the claim of deprivation of due process.

One month later, on June 26, 1987, this court ordered the parties to rebrief and reargue their summary judgment motions on the due process claim "in light of the Sixth Circuit's recent opinion in *Duchesne v. Williams, et al.*, slip opinion # 86 1017 (June 16, 1987)." In its Order, the court further directed the parties to "specifically address the unresolved issue of the source of plaintiff's alleged property right in his

employment which would implicate the due process requirements of *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 [105 S.Ct. 1487, 84 L.Ed.2d 494] (1985)." The first motions had not touched upon the source of plaintiff's claim of property in his job.

This memorandum constitutes the court's finding of fact and conclusions of law on the matter.

## III.

In order to state a claim for deprivation of due process of law in a discharge context, plaintiff must first demonstrate a property interest in his employment. *See Cleveland Board of Education v. Loudermill, supra*, at 538, 105 S.Ct. at 1491. If plaintiff demonstrates such a right, the state may not deprive him of this property without the due process of law. *Id.* at 538, 105 S.Ct. at 1491, citing *Memphis Light, Gas and Water Div. v. Craft*, 436 U.S. 1, 11–12, 98 S.Ct. 1554, 1561–62, 56 L.Ed.2d 30 (1978) (other citation omitted).

Defendants here have stated that, "for purposes of this motion," they do not dispute plaintiff's claim of a property interest in the position of detective, Highland Park Police Department. Nonetheless, a review here of the undisputed sources of plaintiff's property right is appropriate.

In *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), the Supreme Court stated:

Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

In *Loudermill*, supra, the Supreme Court specifically affirmed that a security guard and a school bus mechanic had property interests in their jobs by virtue of an Ohio statute, Ohio Rev.Code Ann. § 124.11 (1984), defining them as " 'classified civil service employees' ... entitled to retain

their positions 'during good behavior and efficient service,' who could not be dismissed 'except ... for ... misfeasance, malfeasance or nonfeasance in office,' § 124.34." *Id.*, 470 U.S. at 538–39, 105 S.Ct. at 1491. As the *Loudermill* Court put it: "The statute plainly supports the conclusion, reached by both lower courts, that respondents possessed property rights in continued employment." *Id.*, at 539, 105 S.Ct. at 1491–92.

In the instant case, plaintiff has established beyond doubt that he has a similar property interest in continued employment with the Highland Park Police Department.

The collective bargaining agreement governing employees of the Highland Park Police Department provides that employees may not be disciplined or discharged without just cause, providing a five-step grievance procedure culminating in arbitration.

Moreover, as in *Loudermill*, plaintiff's property interest is further grounded in state law, pursuant to the Charter of the City of Highland Park and the Michigan Civil Service statute governing police officers.

Section 7–9 of the City Charter governs the police department and states at 7–9(4):

> The plan of Civil Service for policemen and firemen as established by Act # 78 of the Public Acts of 1935, as amended, (MCL 38.501 *et seq.*), which was in effect in the City on the effective date of this Charter, is hereby continued under this Charter and incorporated therein by reference with all future amendments, with the same force and effect as though fully set forth therein, and nothing is hereby added to or deleted from such Act by such incorporation.

The Michigan Civil Service act governing police and fire personnel, M.C.L. § 38.501 *et seq.*, commonly known as the Firemen's and Policemen's Civil Service Act, provides in § 13 (M.C.L. § 38.513):

> In all cases of ... suspension of an employee or subordinate, whether appointed for a definite term or otherwise the appointing authority shall furnish such employees or subordinate with a copy of reasons for ... suspension and his rea-

sons for the same, and give such employee or subordinate a reasonable time in which to make and file an explanation ... Provided, however, that the employee or subordinate shall be entitled to a hearing before the commission as provided in § 14.

This provision permits a suspension for up to 30 days, and contemplates that the hearing to which the employee is entitled be held during that 30 day period.

§ 14 of the Act (M.C.L. § 38.514) provides in relevant part:

> ... [H]owever, no member of any fire or police department within the terms of the Act shall be removed, discharged, reduced in rank or pay, suspended or otherwise punished except for cause, and in no event until he shall have been furnished with a written statement of the charges and the reasons for such actions, and all charges shall be void unless filed within 90 days of the date of the violation ...

Thus, this court finds that plaintiff's property interest in continued employment arises from his CBA, the City Charter and the state Civil Service law.

### IV.

█ The court must also determine whether plaintiff was deprived of his property without due process of law. After consideration, this court finds that the pretermination procedures provided to Detective Buckner failed to satisfy the minimum constitutional requirements of the due process clause.

Both the due process clause of the Fourteenth Amendment and Michigan Civil Service law require that a public employee such as plaintiff be given a reasonable opportunity to respond to charges leading to dismissal.

In *Loudermill, supra*, the Supreme Court stated:

> Some opportunity for the employee to present his side of the case is recurringly of obvious value in an accurate decision. Dismissals for cause often involve factual disputes. (citation omitted). Even where the facts are clear, the appropri-

ateness or necessity of the discharge may not be. In such cases the only meaningful opportunity to invoke the discretion of the decisionmaker is likely to be before termination takes effect. (citations omitted).

*Id.* at 543, 105 S.Ct. at 1494.

Detective Buckner was denied any meaningful opportunity to respond to the accusations against him prior to his discharge on November 16, 1984, eight days after the alleged incident giving rise to his dismissal.

First, the Firemen and Policemen's Civil Service Act requires that any suspended officer must be given a written statement of the charges against him. M.C.L. § 38.514, *supra.*

■ The court finds that plaintiff was denied his statutory right to such a "written statement." The uncontroverted evidence shows only that Buckner was allowed to read a copy of Letite Riley's complaint against him on the day he was hospitalized. Buckner was not given any clear idea, either on that day or at any other time prior to his termination on November 15, of the actual charges that the police department was contemplating as a result of Riley's complaint. Indeed, Buckner was told that he was suspended "pending investigation of possible criminal charges", and advised of *Miranda* rights. Nor was he given a reasonable time to make and file an explanation.

The Michigan courts have held that the purpose of the Firemen and Policemen's Civil Service Act is to provide job security and to protect officers and employees from arbitrary and unjust removal. *See Konyha v. Mount Clemens Civil Service Commission,* 393 Mich. 422, 224 N.W.2d 833 (1975); *Day v. Gerds,* 54 Mich.App. 547, 221 N.W. 2d 221 (1974). As part of that protection, the statutory language clearly contemplates that the "written statement" should provide more notice than simply a complainant's allegations, since § 14 states that prior to discharge, the officer shall receive a "written statement of the charges *and* the reasons for such action." M.C.L. § 38.514 (emphasis added).

While the Michigan courts have stated that, in certain circumstances, "the charges and discipline may ... be imposed by way of a single letter," *see Core v. City of Traverse City,* 89 Mich.App. 492, 280 N.W. 2d 569 (1979), both the statute and the Michigan courts in *Traverse City* and other decisions, have made it clear that such notice is adequate only where the plaintiff had a *reasonable* opportunity to make an explanation and is granted a fair hearing on the charges. As further discussed below, plaintiff was afforded no such opportunity.

Similarly, the Supreme Court has held that due process requires more than an unverified allegation before a plaintiff's property interest in continued employment may be properly terminated. In *Boddie v. Connecticut,* 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971), the court referred to the "root requirement" of the due process clause as being "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." (emphasis in original).

"While the pretermination hearing need not definitively resolve the propriety of the discharge," the Court stated in *Loudermill,* "it should be an initial check against mistaken decisions—essentially a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Id.* 470 U.S. at 545, 105 S.Ct. at 1495. See *Bell v. Burson,* 402 U.S. 535, 540, 91 S.Ct. 1586, 1590, 29 L.Ed.2d 90 (1971).

Even if the copy of Riley's complaint made available to Buckner on the day he was hospitalized satisfied the "written statement" requirement, the pretermination process afforded plaintiff was still constitutionally deficient since it is clear from the undisputed facts that plaintiff was not afforded a "meaningful opportunity" to respond.

The Michigan Civil Service statute requires that suspended employees must be given a "reasonable time in which to make and file an explanation" and be given a hearing before the hiring authority. See

M.C.L. § 38.513. In this case, plaintiff was suspended on the day he was admitted to the psychiatric ward of a hospital for alcoholism treatment, and he was fired eight days later while he was still hospitalized.

Defendants' assertion that plaintiff had "numerous opportunities" to respond during the eight day interval between his initial hospitalization and his dismissal must be rejected. The court finds that on the undisputed facts plaintiff had at most *one* opportunity to respond to Riley's charges, i.e., when Lt. Holloway and Officer Yopp visited him on November 8 at the hospital, only hours after Buckner had been admitted.

■ The record indisputably reflects that this single visit on November 8 was *not* a constitutionally-adequate "reasonable opportunity" for Buckner to provide an explanation or otherwise respond. Not only was Buckner advised during the visit by Officer Yopp, his union representative, not to make a statement at that time, but more importantly, the record shows that Lt. Holloway advised plaintiff of his *Miranda* rights and informed him that he was the subject of a *criminal* investigation. Under such circumstances, Buckner's failure to respond immediately and his corresponding exercise of his constitutional right against self-incrimination may not be construed as a waiver of his right to file an explanation within a "reasonable time" or otherwise be held against him.

Defendants' assertion that plaintiff was given another opportunity to respond when he was visited by Officer Brookman, the union president, is not supported in the record. While Chief Ford claims he *requested* that Brookman visit Buckner in the hospital, plaintiff stated under oath in his deposition that Brookman had visited him in the hospital "about 10 days" after he was first hospitalized. Moreover, by affidavit, Officer Brookman has attested that he was *not* sent by Chief Ford to the hospital to obtain plaintiff's statement, and that even if he *had* visited plaintiff prior to his discharge, it would have been only in Brookman's capacity as union president. Brookman further testified that he was never told by Chief Ford or anyone else to advise Buckner of the police department's intent to discipline him. Finally Brookman stated that he did not actually visit Buckner until November 26, 1984, *after* plaintiff had already been dismissed. Therefore, even if all city claims concerning Brookman are credited, he did not provide the requisite opportunity to plaintiff.

The defendants' assertion that the *post*-termination grievance and arbitration procedures provided under the CBA afforded plaintiff ample opportunity to defend his property interest misperceives the meaning of the Supreme Court's decision in *Board of Education v. Roth, supra; Boddie v. Connecticut, supra; Loudermill, supra,* and other cases in which the Court has interpreted the requirements of the due process clause in the context of a threatened property interest. These decisions emphasize that where fundamental rights such as the property interest in continued employment are at stake, the Fourteenth Amendment requires that reasonable precautions be taken to avoid erroneous deprivations *before* they occur.

As the *Loudermill* Court stated:

The governmental interest in immediate termination does not outweigh [the employee's] interests ... [A]ffording the employee an opportunity to respond prior to termination would impose neither a significant administrative burden nor intolerable delays ... Finally, in those situations where the employer perceives a significant hazard in keeping the employee on the job, it can avoid the problem by suspending with pay.

*Id.* 470 U.S. at 544–45, 105 S.Ct. at 1495. In this case, plaintiff could hardly have been deemed a significant hazard while hospitalized in the psychiatric ward of Henry Ford Hospital. In any event, defendants were authorized by the applicable Civil Service statute, M.C.L. § 38.514, to suspend plaintiff for up to 30 days *without* pay, before holding the hearing required by the statute, and defendants took such action. Defendants have failed to satisfy the statutory requirement because they denied plaintiff "reasonable time in which to make

and file an explanation" and the "hearing before the commission as provided in § 14." See M.C.L. § 38.513. Because plaintiff was denied these statutory protections, he did not have the meaningful opportunity to respond mandated both by the statute and the due process clause.

In determining that plaintiff was deprived of due process, the court emphasizes that it is not holding that plaintiff was necessarily entitled to a pretermination hearing, but only that he was entitled to a pretermination *opportunity to respond* that was meaningful and reasonable. *See Loudermill, supra,* at 543, 105 S.Ct. at 1494. And, of course, the court's holding expresses no view whatsoever as to the merits of either plaintiff's or defendants' claims on the underlying dispute in this case.

### V.

■ In its order dated June 26, 1987, instructing the parties to rebrief and reargue their cross motions for summary judgment, the court indicated that it was doing so "in light of the Sixth Circuit's recent opinion in *Duchesne v. Williams, et al.,* slip opinion # 86 1017 (June 16, 1987) ..."

In determining the appropriate remedy for the deprivation of plaintiff's constitutional right to due process, this court is guided not only by *Loudermill* and other Supreme Court decisions, but also by *Duchesne.* There are two particular reasons why this court should take guidance from the *Duchesne* decision: first, because that action involved a substantially similar dispute as to the extent of constitutional due process requirements where a public official's property interest in his employment is at stake, and second, because the plaintiff here seeks the same kind of relief as that ordered by the district court and upheld by the Sixth Circuit in *Duchesne.*

In *Duchesne,* the plaintiff brought an action charging deprivation of due process when he was fired as chief building inspector for a Detroit-area municipality by the city manager following a dispute. The district court found the plaintiff had a property right in continued employment with the

city, and that he had been denied due process when he was discharged by the "appointing authority" (the city manager) after a hearing in which the city manager presided, developed the charges, testified extensively against the plaintiff, weighed the evidence and determined there was cause for plaintiff's dismissal.

The relevant statute in *Duchesne,* defining the process due to the public official when his property interest was at stake, states in part:

... The building official shall be appointed by the chief appointing authority of the jurisdiction; and the building official shall not be removed from office except for cause and after full opportunity to be heard on specific and relevant charges by and before the appointing authority.

M.C.L. § 125.1504, as promulgated by Mich.Admin.Code Rules 408.30401. The district court found that plaintiff was denied a hearing comporting with the requirements of the statute.

In the instant case, plaintiff Buckner's property interest was similarly protected by statute, M.C.L. § 38.513, providing that he be given a reasonable time to respond and a hearing within 30 days of any suspension. Both statutes have as their purpose the protection of employees from arbitrary and unjust removal from office, *see Konyha v. Mount Clemens Civil Service Commission, supra; Day v. Gerds, supra,* and *Duchesne, supra,* slip opinion at 11. As discussed above, plaintiff was denied the process which was his due under the constitution and the applicable Michigan statute.

The remedy approved by the district court in *Duchesne,* and affirmed by the Sixth Circuit, included (1) a new hearing before a mutually agreed-upon neutral hearing officer; (2) reinstatement of the plaintiff pending the rehearing and (3) back pay. In the instant case, the court need not order the first element of the *Duchesne* remedy, as there was no hearing, constitutionally adequate or otherwise, in the first place and because the parties have agreed to submit resolution of the merits of the underlying dispute to binding arbitration.

Plaintiff seeks an award of back pay until such time as some kind of constitutionally-adequate hearing is provided, together with reimbursement of lost benefits and pension monies withdrawn to supplement plaintiff's income after his dismissal.

With regard to back pay, the Sixth Circuit noted in *Duchesne* that "the *Loudermill* opinion is quite clear on what process is due, but not on what the appropriate remedy is for its denial," and stated that *Loudermill* could be read to mean either (1) that plaintiffs are entitled to new pre-termination hearings, with such ancillary relief, including reinstatement and back pay, as is necessary to preserve the status quo, *or* (2) that plaintiffs are entitled to only nominal damages for denial of a pre-termination hearing if the employer ultimately shows that the employee would have been dismissed after a fair hearing. *Id.*, slip opinion at 19.

While the *Duchesne* court cited decisions including *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) and *Kendall v. Board of Education*, 627 F.2d 1 (6th Cir.1980) suggesting that in some circumstances only nominal damages are appropriate, the court determined that *Carey* and *Kendall* were not directly applicable to *Duchesne*, because these pre-*Loudermill* cases "involved plaintiffs who claimed a right to money damages for the deprivation of due process before they had proven any injury from that deprivation." *Duchesne, supra,* slip opinion at 18.

By contrast, the district court in *Duchesne* found that plaintiff had proven his injury resulting from his termination without a fair hearing. In this case, and for the reasons cited earlier in this opinion, the court finds on the demonstrated facts that Buckner has proven an injury in the deprivation of his property interest in continuing employment that is similar to that of the plaintiff in *Duchesne.*

Noting that *Loudermill* has been read both ways as to the issue of back pay, the Sixth Circuit in *Duchesne* concluded that "It has been more common … to read *Loudermill* as not only prescribing what process is due, but as altering the law on

what relief a plaintiff is entitled to once a denial of due process is demonstrated," *id.*, slip opinion at 20, citing several decisions where back pay was awarded until such time as proper pre-termination hearings were conducted. (Citations omitted).

In affirming the award of back pay as part of the equitable remedy in *Duchesne*, the Sixth Circuit also cited with approval the discussion by Chief Judge Lay in *Hogue v. Clinton*, 791 F.2d 1318 (8th Cir.), *cert. denied,* — U.S. ——, 107 S.Ct. 648, 93 L.Ed.2d 704 (1986) (dissent), in which he distinguished the liberty interest deprivation in *Hogue* from the property interest deprivation that formed the basis of the Court's due process decision in *Loudermill,* stating "[The *Loudermill* ] rule clearly imposes on public employers an obligation to retain an employee on the payroll until a pretermination hearing satisfying the *Loudermill* notice and hearing requirement is conducted." *Duchesne, supra,* slip opinion at 22, quoting Chief Judge Lay in *Hogue v. Clinton, supra,* at 1328–29. As Judge Lay put it, "To effectively bar recovery of back pay damages … would make a mockery of the requirement of a pretermination hearing since, without the deterrent of a back pay award, no incentive remains for the employer to do anything more than provide only a post-termination hearing."

Because the court finds on the undisputed facts that plaintiff had a property interest in continued employment, and that he was deprived of that interest without a meaningful opportunity to respond to the charges, in violation of his statutory and constitutional rights—under circumstances substantially similar to those in *Duchesne* —the court orders that plaintiff be awarded back pay for the period of time beginning on November 16, 1984, the date of the unlawful termination of his property interest until such time as he was given a meaningful opportunity to respond to the charges against him through binding arbitration or other fair hearing. Therefore, back pay and benefits are awarded until either the date of plaintiff's hearing, or the first date set for that hearing which was adjourned by plaintiff, and not defendant, whichever date is the earlier of the two.

The court emphasizes that this relief is appropriate given the procedural due process requirements outlined in *Loudermill, supra,* when a constitutionally-protected property interest is placed in risk. The court further notes that its award of back pay pending a constitutionally-adequate notice and opportunity to respond is based on the strong similarity on the facts and the law between this case and *Duchesne,* and the Sixth Circuit's approval of the remedy in that case.

Finally, this court emphasizes again that in awarding such relief, it expresses no view whatsoever on the merits of the underlying dispute leading to the unconstitutional deprivation. But it is the essence of the Court's ruling in *Loudermill* that the decision on the merits is a distinctly separate issue. As the Court in *Loudermill* stated "The right to a hearing does not depend on a demonstration of certain success," and "governmental interests in immediate termination do not justify termination before a constitutionally sufficient hearing has been held." *Id.* 470 U.S. at 544, 105 S.Ct. at 1494.

For the above reasons, plaintiff's motion for summary judgment is GRANTED, with an award of back pay as outlined above, and defendants' motion for summary judgment must be DENIED.

IT IS SO ORDERED.